HARDIN *v.* STATE OF INDIANA.

[No. 268S24. Filed April 27, 1970. No petition for rehearing filed.]

*William C. Erbecker,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, *Dennis J. Dewey,* Deputy Attorney General, for appellee.

DeBruler, J.—This is an appeal from a conviction for possession of marijuana in violation of Acts 1935, ch. 280, as amended by Acts 1961, ch. 90, the same being Burns' Ind. Stat. Ann. § 10-3538 (c). Trial was without jury in Marion County Criminal Court No. One, and appellant was sentenced to two to ten years in prison.

In his brief on appeal appellant alleges that certain evidence and statements of appellant were illegally obtained, there was insufficient evidence that the substance in question was marijuana, and the statute is unconstitutional.

· The evidence most favorable to appellee was that on October 5, 1965, Officers Ward and Jones of the Indianapolis Police Department Narcotics Squad, and one federal narcotics agent were driving in the 1800 block of Yandes Street, Indianapolis, Indiana, when they saw appellant and several other men standing on the porch of an abandoned, vacant house. Jones drove around the block, dropped Ward off in back and returned to park in front of the house where he got out of the car. As Jones approached the abandoned house the men went inside and Jones heard them running. As he entered he saw three men crawl out through the broken and empty windows. Then Jones heard Ward in the backyard shout something he did not understand and saw appellant come toward him from the back door. Jones testified that appellant appeared to be drunk, and he was placed under arrest for drunk. Appellant testified that he and the men had been drinking gin and wine immediately prior to the arrival of the police.

As Ward approached the back of the house he saw appellant come out of the back door and throw a small white coin envelope in the weeds on the South side of the porch. As appellant turned around and ran back into the abandoned house, Ward yelled, "Wilbur you are under arrest." Ward got the white coin envelope and took it into the house to Jones.

When Jones received the package which Ward had seen appellant throw away, Jones examined it, found it contained a green weedy substance, and he then placed appellant under arrest for possession of marijuana. Before Jones could advise appellant of his rights appellant said, "Dick Jones you know that wasn't none of my grass." Ward also heard that remark. Jones then advised the appellant that he did not have to talk to him and that anything he said would be used against him.

Appellant then repeated the claim that the "grass" was not his.

A. Appellant alleges that the evidence introduced against him at trial, the package and its contents retrieved from the weeds by Officer Ward, was obtained as the result, not of any specific act amounting to an arrest, but of an "unjustified and illegal course of conduct of the investigating officers." Appellant says the evidence was the fruit of such conduct and tainted by it so as to render it inadmissible.

In the case at bar the police officers had a right to investigate the activities of a group of men drinking in and around a vacant, abandoned house. It is common knowledge that such houses are a constant source of danger to the surrounding houses due to fires started either purposely or carelessly, by persons temporarily on the premises, even though for an innocent purpose. Such persons may also accidentally create dangerous conditions for children attracted there to play. In the course of this legitimate investigation by the police, and prior to any arrest, the men fled and appellant abandoned the package in question by throwing it out the back door into some weeds. That package was admissible because the police conduct was perfectly legal and did not amount to an arrest. This view is supported by *Rios* v. *U. S.* (1960), 364 U. S. 253, 4 L. Ed. 2d 1688, 80 S. Ct. 1431, when the United States Supreme Court said:

> "Here justification is primarily sought upon the claim that the search was an incident to a lawful arrest. Yet upon no possible view of the circumstances revealed in the testimony of the Los Angeles officers could it be said that there existed probable cause for an arrest at the time the officers decided to alight from their car and approach the taxi in which the petitioner was riding. . . . This the Government concedes.
>
> If, therefore, the arrest occurred when the officers took their positions at the doors of the taxicab, then nothing that happened thereafter could make that arrest lawful, or justify a search as its incident. . . . *But the Government argues that the policemen approached the standing taxi only for the purpose of routine interrogation, and that they*

*had no intent to detain the petitioner beyond the momentary requirements of such a mission. If the petitioner thereafter voluntarily revealed the package of narcotics to the officers' view, a lawful arrest could then have been supported by their reasonable cause to believe that a felony was being committed in their presence. The validity of the search thus turns upon the narrow question of when the arrest occurred,* and the answer to that question depends upon an evaluation of the conflicting testimony of those who were there that night." (Emphasis added.) 364 U.S. at 261.

In our case the course of police conduct which preceded appellant's abandoning the package was legitimate and did not amount to an arrest. The package was, therefore, admissible in evidence.

B. Appellant contends that the incriminatory statements by appellant made immediately after the arrest and prior to a proper warning or interrogation were obtained in violation of the Fifth Amendment to the United States Constitution, and hence inadmissible.

Appellant made no pre-trial motion to suppress this evidence. Two different witnesses testified to appellant's extra-judicial statements without appellant objecting to such testimony. Appellant did not raise this issue in his motion for a finding in his favor at the close of the State's case, nor in a similar motion filed at the close of all the evidence. This issue is not, therefore, preserved on appeal.

The same thing applies to appellant's contention that appellant's extra-judicial statements were incompetent because appellant was drunk at the time of arrest as evidenced by his arrest for drunkenness.

C. Appellant alleges that the State's evidence tending to show that the substance alleged to be cannabis sativa was, in fact, that substance, was not sufficient to sustain the finding of guilty.

On a challenge to the sufficiency of the evidence this Court does not weigh the evidence but looks to that evidence and the

reasonable inferences therefrom most favorable to the State. The conviction will be affirmed if from that viewpoint there is some evidence from which a reasonable trier of fact could infer the appellant was guilty beyond a reasonable doubt. *Fair* v. *State* (1969), 252 Ind. 494, 250 N. E. 2d 744.

Appellee's evidence on this point was the opinion testimony of an expert witness and the extra-judicial statements of appellant. Sgt. Kerkhoff of the Indianapolis Police Department whose qualifications as an expert went unchallenged in the trial court stated that he made a microscopic examination of the questioned substance and performed a chemical test called the Duquenois test. He testified without objection that the Duquenois test is recommended by the United States Bureau of Narcotics for detecting cannabis. Based on these two types of examination the witness formed the opinion that the questioned substance was cannabis sativa. The results of these tests were corroborated by the extra-judicial statement of appellant identifying the substance as "grass" a commonly used name for cannabis sativa. Admittedly, counterfeit substances are sometimes palmed off on unsuspecting purchasers of marijuana and standing alone appellant's identification of the substance as marijuana would not be sufficient. However, it does tend to corroborate the testimony of the expert witness. There was no cross examination of the expert witness concerning the possibility of the tests being in error. Appellant offered no evidence on this point. On this record it is clear that the appellee presented a prima facie case that the substance in question was cannabis sativa. Once that is determined our scope of review implies that our scrutiny of the evidence is complete.

D. Lastly, appellant contends that the Uniform Narcotics Act, which punishes the mere possession of marijuana by two to ten years in prison, is unconstitutional on three grounds.

(1) It is in violation of the due process clause of the Fifth Amendment and Fourteenth Amendment to the United

States Constitution in that there is no scientific evidence that possession and use of marijuana is sufficiently injurious to the public health, safety, morals or welfare, to justify the exercise of the police power of the State to prohibit the mere possession of marijuana by adults.

(2) It is a violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution in that there is no rational basis in scientific fact for classifying marijuana differently than alcohol, and prohibiting the possession by adults of the former but not the latter.

(3) It violates the Eighth Amendment to the United States Constitution and Art. 1, §§ 15 and 16 of the Indiana Constitution by punishing an offense more severely than is justified by the State's interest in preventing the resulting harm, and applying unnecessary rigor and engaging in vindictive justice.

Appellant's claim that the Uniform Narcotics Act is unconstitutional is based on factual allegations concerning the effects of the use of marijuana and alcohol on the human body, and since no evidence was presented in the trial court on this issue we cannot make a determination of it for the first time on appeal.

Judgment affirmed.

Hunter, C.J., Arterburn, Givan, JJ., concur; Jackson, J., concurs in result.

Note.—Reported in 257 N. E. 2d 671.