CARLIN *v.* STATE OF INDIANA.

[No. 769S161. Filed July 1, 1970. No petition for rehearing filed.]

*Charles V. Livengood,* of Richmond, for appellants.

*Theodore L. Sendak,* Attorney General, *Edward Squier Neal,* Deputy Attorney General, for appellee.

HUNTER, C.J.—Appellants were charged jointly by affidavit with the crime of second degree burglary. Upon pleas of not guilty, appellants were tried before a jury in the Wayne Circuit Court. Upon a finding of guilty as charged, both appellants were sentenced to the Indiana State Prison for a period of not less than two [2] nor more than five [5] years and were disfranchised and rendered incapable of holding office of profit or trust for a term of five [5] years.

In this appeal, appellants assign as error the overruling of their amended motion for new trial. In that motion appellants raise several points which shall be dealt with in the order presented. Although necessary only to the last point argued we shall first briefly review the evidence most favorable to the state.

On the evening of February 11, 1967, one Mrs. Myers, the night cleaning lady at the Dille-McGuire Manufacturing Com-

pany, was performing her various cleaning duties at the plant when at approximately 2:00 A.M. she noticed the front panel of a cigarette vending machine, located on the first floor, down and the money box sitting outside. Upon making this discovery she promptly called the personnel manager who in turn instructed her to call the "dispenser man". At about this same time she heard a strange noise on the second floor whereupon she immediately called the personnel manager a second time; he instructed her to call the police, which he did.

Mrs. Myers opened one of the plant entrances for the police upon their arrival and directed them to the second floor. Two policemen walked the stairs to the second floor and down an aisleway towards the employees' area. The lead officer, Officer Kolentis, first heard conversation originating near the employees' area and observed one man attempting to pry a vending machine open with a tool he had in his hands. A few feet away he saw a pair of welding tanks, welding equipment, a tarpaulin and a light flashing underneath the tarpaulin.

After observing the scene for about a minute Kolentis' presence was discovered by one of the appellants, Frank Carlin, who had turned to grab a container of milk. Kolentis ordered appellant Frank Carlin to raise his hands and turn around and face the machines. At this point, appellant Cecil Carlin raised up from underneath the tarpaulin where he had apparently been using a torch on a lock from one of the vending machines.

Both appellants were handcuffed on the scene and escorted to the first floor and subsequently to the county jail. Officer Geiger toured the plant and located several vending machines which had been pried open and the money boxes removed. A dollar bill change machine had been removed from its location on the second floor and was found in the elevator. Its face was burned off and that money box had also been removed. Fifty-four one dollar bills were recovered from the persons of appellants. Further investigation disclosed a broken win-

dow on the south side of the plant which the police surmised to be the point of entry.

It is first contended that appellants were denied a fair trial in that the trial court erred in denying appellants' third motion for continuance. The record indicates that the public defender was originally assigned to defend the case on February 14, 1967, appellants being without funds to retain counsel. Subsequent thereto, appellants did acquire the necessary funds and retained one James Trimble who filed a motion for continuance on January 23, 1968, two days prior to the date set for trial. The motion was granted but as a result of Trimble's death, the Public Defender was re-assigned to the defense of the case and trial was set for June 24, 1968.

A second motion for continuance was filed and granted to attorney Robert Delaney who took the case on June 21, 1968; the trial date was re-set for July 10, 1968. On July 5, 1968, appellants filed their third motion for continuance which omitting formal captions reads as follows:

"COMES now attorney Robert J. Delaney, on behalf of the above defendants, and moves the Court to continue this cause of action with trial date of July 10, 1968, by reason of the death of defendant's former attorney, James M. Trimble and the recent (6-21-68) entrance of this defense counsel into this case."

It is the overruling of this petition which is here alleged as error. Appellants concede that the granting of such a continuance not based on statutory grounds is within the sound discretion of the trial court. *Calvert* v. *State* (1968), 251 Ind. 119, 239 N. E. 2d 697; *Ward* v. *State* (1965), 246 Ind. 374, 205 N. E. 2d 148; *Souerdike* v. *State* (1951), 230 Ind. 192, 102 N. E. 2d 367. It is their contention, however, that under the circumstances of this case, the denial of the petition was a manifest abuse of such discretion.

The only case cited by appellants to substantiate their claim in this regard is the case of *Sweet* v. *State* (1954), 233 Ind.

160, 117 N. E. 2d 745 where this court held that the fundamental right of each defendant in a criminal case to have competent counsel carried with it as a necessary corollary the right that such counsel have adequate time to prepare a defense. The facts in that case, however, differ substantially from the facts in the case at bar. In *Sweet* the court appointed pauper counsel just four days prior to the date set for trial notwithstanding the fact that the defendant had entered a request for such an appointment one full week earlier. This essentially left the defendant's counsel three days to prepare for trial, one of which was a Sunday. Here, counsel had eighteen full days to prepare for the trial and although we do not hold absolutely that such a time period would always be sufficient time for trial preparation we note that appellants failed to state grounds or show sufficient excuse for the delay requested. See *Blume* v. *State* (1963), 244 Ind. 121, 189 N. E. 2d 568. Petitions for a continuance are not to be favored and will only be granted in the furtherance of justice on the showing of proper grounds. *Calvert* v. *State, supra.* Consequently we are unable to hold under the facts in this case that the denial of appellants' petition was an abuse of discretion.

The second point argued by appellants is that they were interrogated before being advised of their constitutional rights in violation of the express holding of *Escobedo* v. *Illinois* (1964), 387 U. S. 478, 12 L. Ed. 2d 977 and *Miranda* v. *Arizona* (1966), 384 U. S. 436, 16 L. Ed. 2d 694. An examination of the record discloses that Captain Geiger testified for the state on direct examination as to observations made by him of the second floor employees' area following the apprehension of appellants. He then returned to the first floor where appellants were being temporarily held and elicited the statements complained of:

"Q. All right. Then did you go downstairs with the defendants?

A. Yes.

Q. What did you do down there?

A. When they went in this office there, I had some conversation with the two subjects, and then during the process I had shaken them down for weapons or anything like that, and then in their right shirt pockets were some one dollar bills and I asked them, 'Is this your money, or did it come out of the machine?' and they stated that it wasn't theirs, but they didn't say where it came from."

On cross-examination appellant was questioned on the circumstances of the "interrogation" as follows:

"Q. Captain Geiger, prior to questioning the defendants, did you advise them of their right to remain silent and hire an attorney?

A. I didn't question them about anything what was involved only the personal things they had on them.

Q. Did you advise them of their rights?

A. No.

Q. Did you proceed to ask them questions about items they had on them?

A. Just the money. That's all.

Q. Wouldn't you say that the point of interrogation had focused on the defendants at that time? I mean the point that they were suspected of a crime at that time?

A. The only reason for the search was after they was arrested to see what contents they had on them and this came up with it.

Q. I'm aware of that. But you did not advise them that they had the right to remain silent?

A. No."

Notwithstanding the above testimony, we do not believe the mandates of *Escobedo* and *Miranda* to be here in issue. No objection was made to the introduction of the evidence either at trial or by a pre-trial motion to suppress. As we recently held in the case of *Hardin* v. *State* (1970), 254 Ind. 56, 257 N. E. 2d 671, under such circumstances the issue is not preserved on appeal.

Appellants next contend that the trial court improperly received and considered that portion of the pre-commitment investigation report in which the investigating officer recited her understanding of the facts without being subjected to to cross-examination by defense counsel. This point is not well taken, however. Ind. Ann. Stat. § 9-2252 (1969 Supp.) provides as follows:

> "No defendant convicted of a felony shall be committed by any criminal court of record before a written precommitment investigation report, prepared by a probation officer, is presented to and considered by the sentencing court. Whenever precommitment investigation is required, the probation officer making the investigation shall inquire into the circumstances of the offense and shall make such investigation as is prescribed by the state probation director of the department of correction. All local and state police agencies shall be required to furnish to the probation officer such records as the probation officer may request. Where in the opinion of the sentencing court, or the investigating authority, it is desirable, the precommitment investigation may include a physical and mental examination of the defendant. If a defendant is thereafter committed to any penal and correctional institution the investigating agency shall send a written report of its precommitment investigation to the penal institution at the time of commitment."

As we have previously held, the pre-commitment investigation report *must be considered* by the committing court prior to commitment by the very terms of the statute and failure to do so is a proper cause for redress. *Robb* v. *State* (1970), 253 Ind. 448, 255 N. E. 2d 96; *Ware* v. *State* (1963), 243 Ind. 639, 189 N. E. 2d 704.

Appellants cite the case of *In Re Force's Adoption* (1956), 126 Ind. App. 156, 131 N. E. 2d 157 apparently for the proposition that reports of various agencies may not be considered unless opportunity to cross-examine be had. That case, involving an adoption, raised the question of sufficiency of the evidence on the issue of abandonment. Although the majority makes no mention of a Welfare Department report

that was filed, Judge Kendall, in a concurring opinion pointed out the apparent reliance by the trial court on the facts contained therein in making its determination even though the report had not been introduced into evidence, and expressed the opinion that such reliance was improper.

It would seem to be elementary that a court may not consider such extra-judicial matter when making a substantive determination and we would therefore agree with the proposition advanced by Judge Kendall. Here, however, the substantive issue of guilt or innocence is already determined before the trial judge considers the pre-commitment investigation report. Since the report is only considered in regard to the question of commitment, the question of guilt or innocence having already been determined, we fail to see how the judge's consideration of the material contained therein could have prejudiced the appellants.

It is also argued that the court erred in considering that portion of the pre-commitment investigation report regarding the alleged crimes committed by appellant Cecil Carlin while he was a juvenile. No authority is advanced for this proposition and we fail to see its merit. As appellee points out, the statute above quoted provides that all local and state police agencies shall be required to furnish such records as may be requested. Since appellant Cecil Carlin's juvenile records had not been destroyed pursuant to Ind. Ann. Stat. § 9-3215a (1969 Supp.) they would be available under § 9-2252, *supra*.

Appellants next contend that they were denied a fair trial in that the amount of the loss resulting from the burglary was not established. The material elements of second degree burglary have been previously set out by this court to be:

(1) a breaking,
(2) an entering,
(3) of a building or structure other than a dwelling-house or place of human habitation,
(4) coupled with intent to commit a felony in such building or structure.

*Lee* v. *State* (1968), 250 Ind. 64, 235 N. E. 2d 67. It is quite apparent that it was unnecessary for the state to prove ■ the amount of the loss since such fact does not constitute an element of the offense.

Finally, it is contended that the verdict is not sustained by the evidence and is therefore contrary to law. More specifically it is argued that there was no showing of a breaking and entering as required by Ind. Ann. Stat. § 10-701 (1956 Repl.). Although appellants testified that they gained entrance to the building through an unlocked and open door, it was the state's theory that they entered through a window found on the south side of the plant. To bolster this theory, Mrs. Myers and others testified as to the security measures taken on the night of the burglary. Clearly the issue presented was one for the jury and not this court. There is sufficient evidence from which the jury could have reasonably inferred that all doors were locked and appellants broke the window in order to enter the building.

For the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn, DeBruler and Givan, JJ., concur; Jackson, J., concurs in part and dissents in part with statement.

DISSENTING OPINION

JACKSON, J.—I concur in that portion of the opinion holding it to be discretionary for the court to grant or deny the continuance.

I am in disagreement with the opinion on points there denominated 2 and 3 and here noted as A and B.

A—On the question Re Escobedo, the defendants were suspect from the moment of their apprehension by the police.

B—On the question of pre-commitment report I think defense counsel is correct. In my opinion the content of such

report and the recommendations therein constituted extra judicial evidence free from cross examination and the opportunity for gossip, personal animosity and private gain to be employed against defendant.

NOTE.—Reported in 259 N. E. 2d 870.