SCOTT HINEMAN *v.* STATE OF INDIANA.

[No. 272A76. Filed February 22, 1973. Rehearing denied March 27, 1973.]

294

*William C. Erbecker,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General, for appellee.

### STATEMENT ON THE APPEAL

STATON, J.—Scott Hineman was charged by affidavit with unlawfully selling marijuana to Donald Grever.[1] He was tried before a court and found guilty. The overruled motion to correct errors raises these issues on appeal:

A. Sufficiency of the evidence on identification.
B. Exclusion by the trial court of plea bargaining testimony offered by Scott Hineman.
C. Entrapment of the Defendant Scott Hineman.
D. "Improper" sentencing standards used by the trial court.

1. IC 1971, 16-6-8-10; Ind. Ann. Stat. § 35-3338 (Burns 1972 Supp.).

In our opinion which follows, we examine each of the above issues and find no merit in any of them. We affirm the judgment of the trial court.

STATEMENT OF THE FACTS: Sergeant Donald Grever, a Marion County Deputy Sheriff, dressed in plainclothes, parked his unmarked car in front of 1436 Minturn Lane in Indianapolis, Indiana. He had received a report from his superiors that ". . . a lot of marijuana dealings . . ." had been going on at this address. There were four or five young people in the front yard. Two young men approached him and asked him if he wanted to speak to Scott Hineman. He said that he did. One of the young men went into the house. It was a dark 9:00 o'clock P.M. with only a porch light approximately fifty-five feet away when Scott Hineman walked up to Sergeant Grever who was leaning against the back of his automobile. Sergeant Grever asked Scott Hineman if there was a party going on here and said that he had heard that they were having a good party. They continued to converse with one another for a few minutes when Scott Hineman asked Sergeant Grever if he wanted to buy some marijuana. Sergeant Grever said yes; Scott Hineman turned and went back into his house. He returned with a bag of marijuana and two pills. Sergeant Grever paid $5.00 for the marijuana and $2.50 for the pills. Scott Hineman told Sergeant Grever that he usually "hung around Holliday Park" and if he ever wanted to purchase anymore he ". . . could meet him in Holliday Park any afternoon." The next day, October 22, 1970, in Holliday Park, Sergeant Grever saw Scott Hineman riding his motorcycle. Sergeant Grever testified:

"He stopped, approached my car, asked me if the grass was okay, or the marijuana was okay. I said, yes. He then asked me if I wanted to purchase some more. I said, yes. He said he would be back with some more after he went home to get it. At that time he went across the street and talked to four or five other subjects over there, got on his cycle and left, and he didn't come back."

Scott Hineman was charged by affidavit and brought before the Marion County Juvenile Court where jurisdiction was waived to the Marion County Criminal Court.[2] On May 5, 1971, Scott Hineman waived formal arraignment and pleaded not guilty. Trial by jury was waived and trial by court was had on September 29, 1971. The trial court found Scott Hineman guilty. Sentencing was set for October 13, 1971 at 2:00 P.M. A pre-sentence report was ordered. It was dated October 12, 1971 and filed with the court on October 13, 1971. Scott Hineman was sentenced to the Indiana State Farm for one (1) year. His motion to correct errors and brief raise four issues set forth below.

STATEMENT OF THE ISSUES: The issues raised in Scott Hineman's motion to correct errors and brief on this appeal embrace these issues:

ISSUE A: Was there insufficient evidence of Scott Hineman's identification to sustain the conviction?

ISSUE B: Was there any evidence submitted which would establish the defense of entrapment?

ISSUE C: Did the trial court commit reversible error when it excluded plea bargaining testimony offered by Scott Hineman?

ISSUE D: Did the trial court commit reversible error in its use and consideration of the precommitment report at the time of sentencing?

Our discussion of these issues in the "STATEMENT ON THE LAW" section of our opinion below will be categorized by the headings "ISSUE A," "ISSUE B," "ISSUE C" and "ISSUE D" as shown above.

## STATEMENT ON THE LAW

ISSUE A: There are two evidentiary facets of Scott Hineman's "insufficiency" argument. The first revolves around

2. The precommitment report states that Scott Hineman was born in Los Angeles, California on August 10, 1953. Juvenile jurisdiction was waived on February 23, 1971. Scott Hineman's 18th birthday would have been August 10, 1971.

the first meeting between Sergeant Donald Grever, and the second revolves around a conflict in the evidence as to what Sergeant Donald Grever said in juvenile court regarding his identification of Scott Hineman.

Sergeant Donald Grever had two opportunities to observe Scott Hineman on October 21, 1971. The first was when Scott Hineman came out to the automobile of Sergeant Grever to speak with him, and the second was when Scott Hineman returned with the bag of marijuana and two pills. Although it was a dark night and the porch light was fifty-five feet away, Scott Hineman was within arm's reach of Sergeant Grever during both encounters. The third opportunity for observation of Scott Hineman by Sergeant Grever was in broad daylight at Holliday Park when Scott Hineman was on his motorcycle approaching Sergeant Grever's car. There was not only a very close encounter here which afforded excellent observation, but there was broad daylight which revealed all of Scott Hineman's facial characteristics.

The second facet of insufficiency concerns Sergeant Grever's testimony in Juvenile Court. There is a conflict in the testimony as to what was actually said by Sergeant Grever. Testimony was offered by Sergeant Grever, Scott Hineman and Scott Hineman's mother. On appeal, we must consider the evidence most favorable to the State. The testimony of Sergeant Grever on cross-examination on this particular conflict is as follows:

"Q. Well, didn't you just get through saying you testified in substance, or in general, that he didn't look like the subject that sold it to me? Didn't you say that out in Juvenile Court?

"A. He had his hair cut when he went to Juvenile Court. Before it was longer than what it is now. When I appeared at Juvenile Court he had his hair cut short approximately like mine. And the attorney asked me if he . . .

"Q. Mr. Barnhart you mean?

"A. Yes, sir. He asked me if there was any changes in the subject's appearance, and I said yes, his hair is shorter than it was.

"Q. All right. Now then you are positive this is the young man that you accosted on October the twenty-first, 1970, right?

"A. Yes, he's the subject."

We have carefully examined the testimony of Sergeant Grever, and all attempts to destroy his testimony were unsuccessful. When the sufficiency of the evidence on the identification of Scott Hineman is raised on appeal, we will only consider that evidence most favorable to the State, together with all logical and reasonable inferences that may be drawn therefrom. *Fuller* v. *State* (1971), 256 Ind. 681, 271 N.E.2d 720; *Gibson* v. *State* (1971), 257 Ind. 23, 271 N.E.2d 706. We will not weigh the evidence nor determine the credibility of witnesses. *Fuller* v. *State, supra; Rusher* v. *State* (1971), 256 Ind. 520, 270 N.E.2d 748; and *Potter* v. *State* (1971), 257 Ind. 370, 274 N.E.2d 699.

We have carefully examined all of the testimony which is connected even remotely with Scott Hineman's identification. There is substantial evidence of probative value from which the trial court as the trier of facts could have reasonably inferred that Scott Hineman was guilty beyond a reasonable doubt. *Fuller* v. *State, supra; Gibson* v. *State, supra.*

ISSUE B: "To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." *Sherman* v. *United States* (1958), 356 U.S. 369, 78 S. Ct. 819, 821, 2 L. Ed. 2d 848. Entrapment is a defense.[3] Its roots are deep in equity soil. The theoretical vehicle is estoppel. In *Sorrells* v. *United States* (1932), 287

---

3. For a full analysis of the entrapment doctrine see *Sorrells* v. *United States* (1932), 287 U.S. 435, 53 S. Ct. 210, 77 L. Ed. 413; *Sherman* v. *United States* (1958), 356 U.S. 369, 78 S. Ct. 819, 2 L. Ed. 2d 848; and *Gray* v. *State* (1967), 249 Ind. 629, 231 N.E.2d 793.

U.S. 435, 445, 53 S. Ct. 210, 214, 77 L. Ed. 413, 418, the Supreme Court of the United States explained its operation:

". . . When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor."

No evidence or inference therefrom suggests that Sergeant Grever implanted the criminal design of selling marijuana in the mind of Scott Hineman. Sergeant Grever testified that he had received reports from his superiors that ". . . a lot of marijuana dealings . . ." had been going on at this address. He did not ask of Hineman if he had any marijuana to sell. The record shows that Scott Hineman asked Sergeant Grever if he wanted to buy some marijuana. Scott Hineman has urged as his first defense at trial that he was not the person from whom Sergeant Grever purchased marijuana. His contention now that if he is the person that he was entrapped is totally without merit. This court stated in *May* v. *State* (1972), 154 Ind. App. 75, 79, 289 N.E.2d 135, 138, in an opinion written by Chief Judge Hoffman that:

". . . [W]here an accused already had the readiness and willingness to break the law, the fact that the police provide a favorable opportunity to commit a crime is not entrapment."

We do not find any entrapment of Scott Hineman. We do not find any error.

ISSUE C: The trial judge sustained the State's objection to a question relating to plea bargaining negotiations which had transpired between Scott Hineman and the State prior to trial. To properly reflect the atmosphere in which the question was asked by Scott Hineman's defense counsel, it is necessary that we refer to the record. Mr. Dyer, the deputy prosecuting attorney representing the State, was preparing

to conclude his cross-examination of Scott Hineman with these three questions:

"Q. Isn't it a fact that you sold Officer Grever marijuana that night?

"A. Is it a fact?

"Q. Isn't that a fact?

"A. No sir.

"Q. Would you lie to keep from going to prison, Scott?

"A. Not if I'm under oath, and I am.

"MR. DYER: We have nothing further, Your Honor.

"REDIRECT EXAMINATION

"QUESTIONS BY MR. ERBECKER, Defense Counsel

"Q. You wouldn't go along with the prosecutor's recommendation for a suspended sentence on a misdemeanor because you wouldn't lie, would you?

"MR. DYER: I will object, Your Honor, it's outside the scope . . .

"MR. ERBECKER: You brought it up.

"MR. DYER: . . . It's outside the scope of redirect.

"MR. ERBECKER: You brought it out in your cross examination, you asked him if he would lie to save himself. Now I am asking him if he would lie up there and plead guilty, even though he would have gotten his freedom, that was the question.

"THE COURT: Well, I am going to sustain that objection. I think references to efforts to plea bargaining are highly irregular to bring them up in this trial of the case, Mr. Erbecker, and I think you know it, and I have already told you that once. You know that's improper.

"MR. ERBECKER: Well, no, I didn't think it was improper.

"THE COURT: Well, I certainly think it is, and if you don't, . . .

"MR. ERBECKER: That was in open court . . .

"THE COURT: . . . you do now.

"MR. ERBECKER: . . . in front of Judge Davis.

"MR. DYER: It is unethical, Your Honor.

"THE COURT: That's exactly right. If you don't know it's improper, I will tell you now it is, sir. And you can take my word for it, it is. And I am now sur-

prised you wouldn't have known it, sir, with your experience.

"MR. ERBECKER: Well, I apologize to the Court, but it was always my . . .

"THE COURT: Well, you don't have to apologize to me, I am not offended by it, but I think it was improper to bring . . .

"MR. ERBECKER: It was always my understanding, Your Honor, that anything that the defendant could say which is true which negates his complicity in a crime he is allowed to testify to. I stand corrected then.

"THE COURT: Well, you should have stood corrected when you moved at the close of the State's case because I told you the Court's file reflected that that's not the truth anyway.

"MR. ERBECKER: That's just a summarization, Your Honor.

"THE COURT: Whether it is or isn't, it's a stamped statement right on the Court's file, and I've told you what it read once before.

"MR. ERBECKER: I know what it read, I was there.

"THE COURT: Well, that's not what you are saying, what this says. In any event, the objection to that is sustained.

"MR. ERBECKER: I have nothing further.

"MR. DYER: Nothing further for the State, Your Honor.

"WITNESS EXCUSED"

Both Hineman and the State have agreed in their briefs:

"Q. You wouldn't go along with the prosecutor's recommendation for a suspended sentence on a misdemeanor because you wouldn't lie, would you?"

is a reference to plea bargaining negotiations. Therefore, distilling the issue here to its simplest terms, it is: *May a Defendant offer plea bargaining testimony in evidence for any reason at trial after entering a plea of not guilty?*

No Indiana case authority speaks to this specific issue. In *Moulder* v. *State* (1972), 154 Ind. App. 248, 289 N.E.2d 522, the State offered and introduced into evidence testimony which related to plea bargaining negotiations to show the

defendant's guilt. This Court held in *Moulder* v. *State, supra,* 154 Ind. App. at 258, 289 N.E.2d at 528:

> "Any communication relating to the plea bargaining process is privileged and inadmissible in evidence unless the defendant has subsequently entered a plea of guilty which has not been withdrawn."

The present case is just the reverse. The defense is offering plea bargaining negotiation testimony to show truthfulness and innocence. In *Moulder* v. *State, supra,* we noted the American Bar Association's Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 3.4 which states:

> "Unless the defendant subsequently enteres a plea of guilty or nolo contendere which is not withdrawn, the fact that the defendant or his counsel and the prosecuting attorney engaged in plea discussions or made a plea agreement *should not be received in evidence against or in favor of the defendant in any criminal* or civil action or administrative proceedings." (Our emphasis)

We adopt this standard as it applies to the present case. We hold that any communication or evidence relating to plea bargaining negotiations offered in evidence by the defendant is inadmissible unless the defendant subsequently enters a plea of guilty which is not withdrawn.

We find no error as to "ISSUE C."

ISSUE D: The precommitment report contained Scott Hineman's juvenile record and statements which characterized him as a troublemaker in high school. It is the trial judge's consideration of these particular items that Scott Hineman contends is improper.

The question of guilt has already been determined when the trial judge considers the content of a precommitment report. In *Carlin* v. *State* (1970), 254 Ind. 332, 259 N.E.2d 870, where the inclusion of a juvenile record was urged as

error, our Supreme Court in an opinion written by Justice Hunter stated:

"It is also argued that the court erred in considering that portion of the pre-commitment investigation report regarding the alleged crimes committed by appellant Cecil Carlin while he was a juvenile. No authority is advanced for this proposition and we fail to see its merit. As appellee points out, the statute above quoted provides that all local and state police agencies shall be required to furnish such records as may be requested. Since appellant Cecil Carlin's juvenile records had not been destroyed pursuant to Ind. Ann. Stat. § 9-3215a (1969 Supp.) they would be available under § 9-2252, *supra*." *Carlin* v. *State, supra,* 254 Ind. at 339, 259 N.E.2d at 874.

The trial court may in its discretion consider Scott Hineman's school life and academic achievements before commitment. *Carlin* v. *State, supra;* IC 1971, 35-8-1-2; Ind. Ann. Stat. § 9-2252 (Burns 1972 Supp.). The strict rules of evidence applicable during trial are no longer applicable at sentencing where the precommitment report may be a dominate influence. This basic difference was drawn by the Supreme Court of the United States in *Williams* v. *New York* (1949), 337 U.S. 241, 246-47, 69 S. Ct. 1079, 1083, 93 L. Ed. 1337:

"In addition to the historical basis for different evidentiary rules governing trial and sentencing procedures there are sound practical reasons for the distinction. In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged. These rules rest in part on a necessity to prevent a time-consuming and confusing trial of collateral issues. They were also designed to prevent tribunals concerned solely with the issue of guilt of a particular offense from being influenced to convict for that offense by evidence that the defendant had habitually engaged in other misconduct. A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly

relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial."

We find no improper use of the precommitment report by the trial court. The precommitment report recommended that Scott Hineman receive an executed sentence of five to twenty years. Scott Hineman was sentenced by the trial court to one year on the Indiana State Farm. We find no error as to "ISSUE D."

The judgment of the trial court should be and the same hereby is affirmed.

Hoffman, C.J. and Sharp, J., concur.