PAULETTE FRY *v.* STATE OF INDIANA.

[No. 2-1174A269. Filed July 9, 1975.]

*Stephen J. Cuthbert,* Tippecanoe Public Defender, of Lafayette, for appellant.

*Theodore L. Sendak,* Attorney General, *Harry J. Watson, III,* Deputy Attorney General, for appellee.

HOFFMAN, J.—Following a jury trial, defendant-appellant Paulette Fry was found guilty of the offense of uttering a forged instrument as defined in IC 1971, 35-1-124-1, Ind.Ann. Stat. § 10-2102 (Burns 1956). The trial court then ordered that appellant be committed to the custody of the Superintendent of the Indiana Women's Prison for a period of not less than two nor more than fourteen years; that she be

fined in the sum of $10; and that she satisfy costs. Appellant timely filed her motion to correct errors which was overruled, and the present appeal was perfected.

The first issue to be considered is whether the trial court erred in refusing to grant appellant's oral motion for a continuance made on the day upon which the trial was to commence.

An examination of the record discloses that on January 25, 1974, the trial court, having determined that appellant was "financially unable to employ counsel of her own choosing", appointed Stephen J. Cuthbert, Public Defender of Tippecanoe County, to represent her. Trial was subsequently set to commence on April 16, 1974, at 9:30 A.M. At such time, appellant made an oral motion for continuance, out of the presence of the jury and before the State presented its case-in-chief; and stated as grounds therefor that on the previous day she had personally contacted and retained counsel at her own expense; that her retained counsel was unable to attend due to prior commitments; and that he would require at least a week in order to prepare for trial. After questioning appellant concerning her financial ability to retain counsel, the trial court overruled appellant's motion.

Where, as in the case at bar, the motion for continuance is not based upon statutory grounds, the ruling on such motion is within the sound discretion of the trial court. *King* v. *State* (1973), 260 Ind. 422, 296 N.E. 2d 113, 115; *Johnson* v. *State* (1970), 254 Ind. 465, 467, 260 N.E.2d 782; *Carlin* v. *State* (1970), 254 Ind. 332, 335, 259 N.E.2d 870; *Reed* v. *State* (1973), 157 Ind. App. 334, 300 N.E.2d 108 (transfer denied); *Trinkle* v. *State* (1972), 153 Ind. App. 524, 288 N.E.2d 165 (transfer denied).

Such ruling must be upheld in the absence of a demonstration of a clear abuse of discretion. Generally, requests for continuance are not favored and will only be granted in furtherance of justice upon a showing of good cause. *Johnson* v. *State, supra; Stock* v. *State*

(1974), 162 Ind. App. 461, 319 N.E.2d 871, 873; *Dockery* v. *State* (1974), 161 Ind. App. 681, 317 N.E.2d 453, 458; *Hopper* v. *State* (1974), 161 Ind. App. 29, 314 N.E.2d 98, 103.

Account must be taken not only of the request of a defendant in a criminal case but also of the public interest in the prompt disposition of the matter. See: ABA Standards, Speedy Trial, § 1.3, at 5 [Approved Draft, 1968].

Appellant contends that the trial court's refusal to grant her request for continuance compelled her to submit to representation by appointed counsel when she professed to have the ability to employ counsel at her own expense.

We must, however, conclude that upon the facts presented the refusal of a continuance and concomitant rejection of a request for substitution of counsel was within the sound discretion of the trial court and did not amount to an abuse thereof. In *United States* v. *Cozzi* (7 Cir., 1965), 354 F.2d 637, at 639, the court stated that,

> "An accused's Sixth Amendment right to select his own counsel does not permit of arbitrary action which obstructs orderly procedure in the courts. United States v. Bentvena, 2 Cir., 319 F.2d 916, 936. It is a right to be exercised at an appropriate stage within the procedural framework of the system of criminal jurisprudence of which it is a part. Absent justifiable basis therefor there is no constitutional right to make a new choice of counsel, with attendant necessity for a continuance because thereof, at the time the trial is scheduled to commence. * * *."

It should be noted that appellant, in making her request for continuance, did not express dissatisfaction with her court-appointed counsel who had represented her for almost three months prior to trial; nor did she offer any reason for desiring a change in counsel other than the fact that she had been recently employed and was of the opinion that she could accumulate the necessary funds. This, it appears, was a good deal less than a certainty, particularly in view of the short

period during which she had been employed and the imminent possibility of conviction of an offense for which she might be confined for a substantial length of time. Counsel purportedly retained by appellant had entered no appearance in the cause and there was no indication that the trial court was otherwise contacted by him. Furthermore, an examination of the entire record discloses that appellant was ably represented by her court-appointed counsel during trial. Under these circumstances, we are of the opinion that the expeditious administration of justice outweighed appellant's desire for the last minute substitution of a different attorney. See: *United States* v. *Hampton* (7 Cir., 1972), 457 F.2d 299; *State* v. *Irvin; Mogle; McAllister* (1973), 259 Ind. 610, 291 N.E.2d 70.

The next issue to be considered is whether the trial court erred in permitting the introduction of evidence tending to establish the commission by appellant of an offense other than the crime charged.

In this regard, appellant first contends that the trial court erred in admitting over objection State's Exhibit No. 6, a Master Charge cash advance memorandum, for the reason that it constituted evidence of a separate offense unrelated to the offense charged.

The information by which appellant was charged, omitting caption and formal parts, reads as follows:

"That on or about the 21st day of November, 1973, at the County of Tippecanoe in the State of Indiana, one PAULETTE FRY did then and there unlawfully, feloniously, falsely, fraudulently, and knowingly make, forge, and counterfeit a certain check, and did then and there unlawfully, feloniously, falsely, and fraudulently utter, publish, pass, endorse, and deliver to Ann Irwin, who was then and there acting as the agent and employee of Lafayette National Bank, as true and genuine said false, forged, and counterfeit check which was of the following tenor, to wit:

| | |
|---|---|
| D. James Morré | 2773 |
| Mrs. D. James Morré | 71-96 |
| 1112 Cherry Lane | |
| West Lafayette, Indiana 47906 | 11-21 1973  712 |

Pay To The
Order Of Mary R. Hyland ————————$350.00
Three hundred fifty 00————————————Dollars

Lafayette National Bank
Lafayette, Indiana

Memo————— Mrs. D. James Mooré
Endorsement: Mary R. Hyland

with intent then and there and thereby feloniously, falsely, and fraudulently to defraud the said Lafayette National Bank, the said Paulette Fry then and there well knowing the said check and endorsement to be false, forged, and counterfeit."

An examination of the evidence discloses that on the morning of November 21, 1973, a woman later identified as appellant-Paulette Fry presented a check at the Columbia Street office of the Lafayette National Bank in Lafayette, Indiana. The check which was introduced into evidence as State's Exhibit No. 1, was drawn in favor of one "Mary R. Hyland" in the amount of $350; the endorsement appeared as "Mary R. Hyland"; and the signature of the maker appeared as "Mrs. D. James Mooré."

Ann Irwin, a teller at the bank in question, testified that she requested appellant to present identification and that appellant, in turn, displayed an Indiana Driver license issued to and bearing the signature of "Mary R. Hyland." In addition, other items consisting of a Master Charge card, an L.S. Ayres & Co. charge card, and a registered account card for Citizens Bank & Trust Company, all bearing Mary R. Hyland's name, were offered as identification. The teller noticed that the description of personal characteristics indicated on the driver's license did not correspond to that of appellant

and subsequently summoned the police. Appellant was thereafter taken into custody and placed under arrest.

During trial, Dr. D. James Morré testified that during November, 1973, three unsigned checks had been taken from a checkbook which was in a briefcase which he kept in his office at Purdue University. He further testified that the check which had been introduced as State's Exhibit No. 1 was among the checks that were missing and that the check did not bear his signature. Mrs. D. James Morré testified that the signature on the check was not her own and that the last name was, in fact, misspelled.

Mary Rose Hyland testified that she had never seen the check before and that the signature by which the check was endorsed was not her's. She further stated that the driver license (State's Exhibit No. 2), L.S. Ayres & Co. charge card (State's Exhibit No. 3), Master Charge card (State's Exhibit No. 4), and registered account card for Citizens Bank & Trust Company (State's Exhibit No. 5), belonged to her; that she found that such items were not in her possession on approximately November 11, 1973; and that she had not authorized anyone to use the items.

Officer James W. Withers of the Lafayette Police Department testified that following appellant's arrest and incarceration he had occasion to examine her personal effects and that among other items contained in her purse he discovered a Master Charge cash advance memorandum bearing the signature "Mary R. Hyland" which was drawn in the amount of $250. The cash advance memorandum was then introduced into evidence as State's Exhibit No. 6 over objection by the defense. Later, State's witness Mary Rose Hyland testified that she had never seen the cash advance memorandum and that the signature indicated thereon was not her own. She also stated that she had not authorized anyone to sign it.

Ginger Brown, a note teller for the Purdue National Bank, testified that on November 12, 1973, a woman whom she later identified as appellant had requested a cash advance of $250.

She further identified State's Exhibit No. 6 as the Master Charge cash advance memorandum which appellant had, in her presence, signed with the name "Mary R. Hyland", and testified that the appellant displayed a driver's license bearing the signature of "Mary R. Hyland" for purposes of identification. The witness also indicated that she did not compare the personal characteristics noted thereon with those of appellant; but only "just sorta' glanced at the signature."

Appellant contends that evidence relating to the cash advance memorandum constituted proof of the commission of an offense separate and distinct from the offense charged and that such evidence was, therefore, inadmissible.

In *Fenwick* v. *State* (1974), 159 Ind. App. 311, 307 N.E.2d 86, at 89-90, this court stated:

> "The general rule in Indiana is that evidence of conduct which shows or tends to show that defendant committed a crime separate and distinct from the crime for which he is charged is irrelevant and inadmissible. However, several well-established exceptions have been recognized. *Evidence showing such separate crimes is admissible if the purpose for its introduction is to show intent, motive, identity, guilty knowledge, or a common scheme or plan.* Van Deveer v. State (1971), 256 Ind. 509, 269 N.E.2d 865; Zimmerman v. State (1921), 190 Ind. 537, 130 N.E. 235. 'It is the probative value of such evidence to prove the crime charged that makes the evidence admissible and not the fact that it proves or tends to prove the defendant guilty of other crimes.' Smith v. State (1939), 215 Ind. 629, 21 N.E.2d 709. These rules apply without regard to whether the challenged evidence relates to conduct occurring prior or subsequent to the offense charged. United States v. Hampton (1972), 7th Cir., 457 F.2d 299, cert. denied, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed. 2d 101; Grimes v. State (1972), 258 Ind. 257, 280 N.E.2d 575." (Emphasis supplied.) See: *Sumpter* v. *State* (1974), 261 Ind. 471, 306 N.E.2d 95; *Schnee* v. *State* (1970), 254 Ind. 661, 262 N.E.2d 186; *Woods* v. *State* (1968), 250 Ind. 132, 235 N.E.2d 479; *Watts* v. *State* (1950), 229 Ind. 80, 95 N.E.2d 570; *Hartwell* v. *State* (1974), Ind. App., 321 N.E.2d 228; *Bell* v. *State* (1974), 162 Ind. App. 511, 319 N.E.2d 859.

Further, in *Todd* v. *State* (1951), 229 Ind. 664, at 672-673, 101 N.E.2d 45, at 48, it is stated:

" 'All the authorities in Indiana and the great weight of authority throughout the country hold that in a prosecution for uttering forged paper it is competent to show that shortly before or shortly after the event charged, the accused uttered similar forged instruments to an extent which makes it improbable that he should have been ignorant of the forgery, as bearing on the intent with which the particular act was done. . . . And many authorities hold that, where a number of like offenses were committed in a like manner, as if by following a novel system, evidence that the accused committed one of such offenses is competent on the question of his identity as the person who committed another for which he is on trial. . . .' *Cooper* v. *State* (1923), 193 Ind. 144, 149, 139 N.E. 184. Other similar acts or offenses are also relevant in a charge of issuing a fraudulent check to evidence fraudulent intent, design, scheme and plan. *Huffman* v. *State* (1933), 205 Ind. 75, 185 N.E. 131."

It must be concluded that evidence relating to the cash advance memorandum was competent under the same rationale as set forth by our Supreme Court in *Todd.* It should be noted that Ginger Brown, the bank employee who gave appellant the cash advance, testified that appellant signed the memorandum in her presence and used the name of "Mary R. Hyland." Such evidence is competent to establish intent on the part of the accused and has a tendency to further identify appellant as having committed the offense charged. In addition, we find that this evidence also tended to show a common scheme or plan whereby appellant would utilize the name of "Mary R. Hyland" in order to obtain money in the local community. See: *Stone* v. *State* (1972), 258 Ind. 435, 281 N.E.2d 799; *Kindred* v. *State* (1970), 254 Ind. 127, 258 N.E.2d 411; *Smith* v. *State* (1939), 215 Ind. 629, 21 N.E. 2d 709.

The next issue to be considered is whether the trial court erred in permitting the testimony of State's witness Ginger Brown regarding her identification of the accused.

It is asserted that the in-court identification made by the witness was tainted by an overly suggestive identification procedure at the police station following appellant's arrest.

In *Ballard* v. *State* (1974), 262 Ind. 482, at 490, 318 N.E.2d 798, at 803, it is stated:

> "There is an abundance of Indiana cases holding that reversible error will not exist if a witness's in-court identification of an accused is supportable by a factual basis which is independent of allegedly erroneous pre-trial identification procedures. [Citing authorities.]"

In the case at bar, Ginger Brown testified that during the cash advance transaction she faced appellant across the counter for approximately fifteen minutes and that her vision was unobstructed throughout such period of time. Thus, there existed an independent factual basis to support her in-court identification of appellant.

The final issue presented is whether the trial court erred in permitting the introduction of State's Exhibit No. 9, together with testimony relating thereto.

Testimony established that the exhibit in question, a check drawn in favor of one Katherine Sparks in the amount of $300 and bearing the signature "Ruth G. Eckert", was, on November 8, 1973, presented for payment to Marcella Boehning, a teller at the Union Street Branch of the Lafayette National Bank. Marcella Boehning, a witness for the State, described the woman who had presented the check, but did not identify the defendant as having done so. It was, however, established that Ruth G. Eckert had not signed the check nor had she authorized anyone to sign it by using her name.

Douglas Buck, a handwriting identification expert who was called as a witness on behalf of the State, was subsequently requested to compare handwriting exemplars which had been taken from the defendant with the handwriting on the check in question. He testified as to his opinion that

there was no doubt in his mind that the defendant had authored the entire check including the major signature thereon.

Prior to the introduction of the foregoing evidence, timely objections were interposed by the defense upon the ground that the defendant had not been sufficiently identified as having presented the check for payment, and that such evidence was not, therefore, material to the issues of the case. The same argument is raised on appeal.

We should point out that if such evidence were not found to be material it would not be for the reason that there was insufficient evidence identifying the accused as having forged the check. The testimony of the handwriting identification expert links the defendant with that *corpus delicti*. However, even assuming *arguendo* that the disputed evidence is otherwise inadmissible we would conclude that its admission was harmless in view of the overwhelming evidence establishing appellant's guilt with regard to the offense charged. *Moss* v. *State* (1975), 163 Ind. App. 483, 324 N.E.2d 820.

No reversible error having been shown, the judgment of conviction entered by the trial court is affirmed.

Affirmed.

Staton, P.J., and Garrard, J., concur.

NOTE.—Reported at 330 N.E.2d 367.