James H. KINDRED, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 685S224.

Supreme Court of Indiana.

June 28, 1989.

 ⚷161(9)

1164

Michael E. Hunt, Public Defender, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Jody Cusson–Cobb, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Following a jury trial, the defendant-appellant, James H. Kindred, was convicted of class C forgery and class D theft. He was sentenced to consecutive terms of 4 years for theft and, upon the finding that he was a habitual offender, 38 years for forgery.

In February 1984, the defendant was employed to perform legal research in the Martinsville office of attorney Joseph Barker. The defendant stole blank checks from Barker's office. The defendant made one of the checks payable to "Hooser Para Legal Firm/Gary D. Hooser" and forged Barker's signature upon the check.

In this direct appeal, the defendant's 47 issues have been regrouped as follows:

1. venue of Morgan County;
2. motion to transfer and consolidate;
3. motion to disqualify trial judge;
4. marital privilege;
5. alleged defects in the informations;
6. motion for change of judge;
7. motion for discharge;
8. discovery request;
9. *pro se* defendant's taking of depositions;
10. handwriting exemplars;
11. motion to strike the jury panel;
12. motion for continuance;
13. motion to exclude testimony;
14. motion for mistrial;
15. trial judge's remarks to defendant;
16. evidence sufficiency for theft conviction;
17. habitual offender determination;
18. defendant's withdrawal from trial proceedings;
19. presence of State's witness during conference on instructions;
20. State's motion *in limine;* and
21. motion for return of money.

## 1. *Proper Venue*

On February 17, 1984, the defendant was charged by information in Morgan County with forgery and attempted theft. The defendant filed a motion to dismiss the forgery count for lack of proper venue based on his allegation that the forged document was made in Monroe County. The trial court denied the motion along with a subsequent motion to reconsider and a motion to transfer venue predicated on the same grounds. The defendant cites these adverse rulings as reversible error and couches his arguments in terms of whether venue is properly challenged by a pre-trial motion to dismiss and whether the State failed to adequately rebut the lack-of-venue allegations.

The defendant's arguments concerning the disposition of his motion to dismiss appear to be based on the contention that if the forged instrument was "made" in Monroe County, it presented a jurisdictional impediment to his conviction in Morgan County and was thus a proper subject of a motion to dismiss under Ind. Code § 35–34–1–4(a)(10). This argument confuses the concepts of "venue" and "jurisdiction," which are separate and distinct. *Anderson v. State* (1983), Ind.App., 452 N.E.2d 173 (decided under former Ind.Code § 35–1.1–2–1). Under our venue statute, Ind.Code § 35–32–2–1, criminal actions shall be tried in the county where the offense was committed. However, if it appears at any time before the verdict or finding that the prosecution was brought in an improper county, the court shall order that the case be *transferred* to the county of proper venue. Ind.Code § 35–32–2–5. Thus, it would have been proper for the defendant to have moved to transfer but not to *dismiss* in this case. The defendant did ultimately move to transfer venue but did so only after the conclusion of the State's case in chief. Thus, the question becomes one of sufficiency of the evidence to support the conclusion that proper venue was in Morgan County.

This case was tried in Putnam County following the grant of the defendant's mo-

tion for a change of venue from Morgan County, where the forgery and theft charges were filed. The defendant contends that Morgan County was not the proper venue because the "making" of the forged instrument occurred in Monroe County.

■ Except as otherwise provided by law, criminal actions are to be tried in the county where the offense was committed. Ind.Code § 35–32–2–1. If an offense is committed in Indiana and it cannot readily be determined in which county the offense was committed, trial may be in any county in which an act was committed in furtherance of the offense. Ind.Code § 35–32–2–1(d). The State has the burden of proving venue, which may be proven by circumstantial evidence alone. *Hatton v. State* (1982), Ind., 439 N.E.2d 565, 568.

A review of the relevant evidence in this case reveals that on or about February 16, 1984, while the defendant was employed as a paralegal in the law office of Joseph Barker in Morgan County, the defendant forged Barker's signature on an instrument stolen from Barker's private office. The instrument containing the forged signature was discovered in the defendant's work area and Barker confronted the defendant, who stated that he was just using the check to practice. We find the evidence sufficient to support the conclusion that the defendant forged the check in Morgan County and committed acts in furtherance of the offense in Morgan County. We therefore find no error.

*2. Motion to Transfer and Consolidate*

The defendant moved to transfer this case to Monroe County and to have the charges consolidated with other charges already pending there. The motion was purportedly filed pursuant to Ind.Code § 35–32–2–5(a) and (c) and Ind.Code § 35–32–2–4(c)(2). He now challenges the trial court's denial of that motion.

We note first that Ind.Code § 35–32–2–5(a) deals with transfer when an action is filed in an improper county, and, as discussed previously, venue was proper in Morgan County. Subsection (c) involves

transfer of cases when the court is without jurisdiction, and the defendant fails to support any contention that the court was without jurisdiction here.

■ Indiana Code § 35–32–2–4(c) provides that "[i]n a prosecution for an attempt to commit a crime, the offender may be tried in any county in which: ... (2) The underlying crime was to have been completed." The wording clearly indicates that it was merely designed to afford an alternative forum in which to try the case and does not bestow upon the defendant any statutory right to be tried in a particular county.

■ The thrust of the defendant's argument seems to be that fairness dictated that the instant offenses should have been consolidated with the offenses charged in Monroe County because they all stemmed from the same continuing series of acts. Citing Chief Justice Bobbitt's separate opinion in *Boyle v. State* (1960), 241 Ind. 565, 170 N.E.2d 802, the defendant suggests that the series of offenses for which he was charged was but a single continuing crime, and that the State was precluded from separating the offenses and trying him for the same offense in one venue after failing to convict him in another venue. He asserts that he was unduly prejudiced in this case because the State, in essence, was allowed to have "two bites at the apple." Despite whatever appeal this argument has at first glance, we are convinced that the trial court's failure to transfer and consolidate the charges did not constitute error.

First, the charges pending in Monroe County were one count of perjury involving the defendant's procurement of a fraudulent driver's license and two counts of forgery (uttering) for passing forged checks at a Bloomington bank. Although the instant charges appear related in the sense that they were part of a comprehensive criminal scheme, the offenses here were based on distinct criminal acts occurring in Morgan County and punishable separately from the offenses charged in Monroe County.

Moreover, the consolidation of actions is governed by Trial Rule 42(A):

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

In *Figg & Muller Engineers, Inc. v. Petruska* (1985), Ind.App., 477 N.E.2d 968, our Court of Appeals held that this rule does *not* authorize transfer of actions from one court's jurisdiction to that of another for consolidation. We see no basis to disturb that holding as it comports with the plain language of the statute; thus, the defendant's argument on this issue must fail.

### 3. Motion to Disqualify Trial Judge

■ On February 20, 1984, the presiding judge in Morgan County disqualified himself from the case as a matter of judicial discretion and ordered the parties to select a special judge by striking the names of two of three judges submitted by the then-presiding judge. The State struck the name of Judge Byron Wells of Shelby County, and the defendant struck the name of Judge William Vaughn III of Putnam County, leaving Judge James Dixon as the appointed special judge. Thereafter, the defendant sought and the court granted his motion for change of venue from Morgan County. Pursuant to Criminal Rule 12 and Trial Rule 76, the parties alternately struck contiguous counties, leaving Putnam County, where Circuit Court Judge William Vaughn III presided over the case. The defendant objected to Judge Vaughn presiding over the case because the defendant had previously stricken Judge Vaughn from the panel of judges from which the special judge was appointed. The defendant moved to disqualify Judge Vaughn and now cites as reversible error Judge Vaughn's denial of that motion. The defendant's argument has no merit.

The defendant relies on Trial Rule 79(11), which provides in part:

Any regular judge of a circuit, superior, criminal, probate or juvenile court and any member of the bar in this state shall be eligible for appointment in any of such courts as a special judge *in any case pending in which he has not sat as judge or been named on a previous panel,....* (emphasis added).

However, as noted in Harvey and Townsend, 4 *Indiana Practice* 611 (1971):

The purpose of [Rule 79] is to provide the procedure by which the parties to an action may select a special judge after a motion for change of venue from the judge has been sustained.

This rule is applicable only to a change of venue from the judge and not a change of venue from the county. The procedure for taking a change of venue from the county is provided for in subsection 9 of Trial Rule 76.

As the State correctly points out, both Trial Rule 76 and Criminal Rule 12 mandate that when a change of venue from the county is granted, the court *shall* send the action to the county not stricken. The procedure was properly adhered to in this case; thus, there was no error. The defendant also contends that the change of venue to Putnam County "even apart from the dictates of Trial Rule 79, violated the defendant's due process and equal protection rights under the Fifth and Fourteenth Amendments to the United States Constitution." He provides no reasoning in support of this contention, nor does he cite any authority; thus, we deem this argument waived under Appellate Rule 8.3(A)(7).

### 4. Marital Privilege

The defendant contends the trial court erred in admitting evidence allegedly protected by the marital privilege.

■ Prior to trial, the defendant moved to suppress "all evidence obtained by the State from State Witness Cathy Elizabeth Kindred [defendant's former wife] to include all information, communications, whether by means of letter, oral, telephonic or recording," made or acquired during the course of the marriage. This motion was

denied, and the wife was allowed to testify concerning information communicated to her by the defendant in the presence of third persons and tangible evidence acquired by her from the defendant in the presence of third persons. The tangible evidence, consisting of a bankbook and a fraudulent driver's license bearing the defendant's picture, was destroyed by the wife upon her discovery of the substantive contents.

The defendant purports to have preserved error on this issue by introducing on the record a continuing objection to *all* of his ex-wife's testimony and the testimony of other witnesses relating to evidence discovered as a result of the ex-wife's revelations to investigators. Although the State does not argue waiver, we find that defendant waived the issue in this instance as both his pre-trial motion and his continuing objection were grossly overbroad.

■ A continuing objection to "all inadmissible evidence" is not an adequate method of preserving error for appeal. This is similar to what the defendant has attempted here. Although allowing continuing specific objections to preserve error may facilitate more orderly and efficient proceedings, the defendant here has attempted to impose a blanket objection to *all* spousal communications. This left to the trial court the task of thoroughly evaluating every question and answer to determine their evidentiary propriety. In other words, the defense counsel has, in effect, unloaded upon the trial court the responsibility of detecting inadmissible evidence and has circumvented his responsibility to articulate and adequately support specific objections. This is an abuse of the continuing objection which in this instance constitutes a waiver of the issue.

■ Notwithstanding any issue of waiver, the defendant's argument must fail for the simple reason that the testimony at trial was restricted to acts and communications made to the wife in the presence of third persons. Thus, such acts and communications were not protected by the privilege. *Perkins v. State* (1985), Ind., 483

N.E.2d 1379; *Fielden v. State* (1982), Ind., 437 N.E.2d 986.

### 5. Alleged Defects in Informations

The defendant raises numerous issues regarding the informations filed in this case and subsequent amendments to those informations. To put the issues in proper perspective, it is necessary to understand the sequence of pleadings and motions involved.

On February 16, 1984, the defendant was charged with a single count of forgery and six counts of attempted theft. All seven counts were charged in separate informations. On February 17, 1984, an initial hearing was held, wherein the court established an April 14, 1984, omnibus date. On February 20, 1984, the defendant moved to dismiss the attempted theft charges, contending that the facts alleged constituted at most only a single offense. On May 24, 1984, the State filed an amended information adding a habitual offender count. On July 9, 1984, a hearing was held on the defendant's motion to dismiss the attempted theft counts. The State's theory on the attempted theft charges was based on the allegation that the defendant's acts of stealing the blank checks each constituted a substantial step toward separate thefts of the victim's money. This is reflected in the prosecutor's argument to the court where she stated:

> Count number two, the check was made out but not signed for the amount of six hundred and fifty dollars and the other ones are all blank and it's our belief because they were going, *we feel they were going to be presented at different times for different amounts of money that therefore they are separate counts of Attempted Theft.* (emphasis added).

On July 20, 1984, the trial court granted the defendant's "motion to dismiss" but simultaneously granted the State "time to file an Amended Information charging the alleged Theft of multiple articles." The State, on August 14, 1984, filed a "motion to amend information" with respect to Count II, an amended Count II and an amended information on Count I (Forgery),

which was in essence a duplicate of the original information on Count I. As for the amended information on Count II, the State replaced the original six counts of attempted theft with one count of theft.

Following the State's filing of the amended information, the defendant filed a prompt objection contending that the amendment was one of substance because it changed both the identity of the offense and the theory of prosecution and was thus precluded by Ind.Code § 35–34–1–5(b), which provides that an information charging a felony may be amended in matters of substance upon giving written notice to the defendant at any time up to thirty days before the omnibus date.

However, Ind.Code § 35–34–1–5(c) states:

> Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.

The defendant argues that the amended information involved "matters of substance" and was thus untimely under subsection 5(b) rather than a "defect, imperfection, or omission in form," for which a belated amendment would be permissible under subsection 5(c).

The defendant contends that the State is absolutely precluded from amending in a manner which changes the theory of prosecution and identity of the offense and cites as supporting authority *Trotter v. State* (1981), Ind., 429 N.E.2d 637, and *Gibbs v. State* (1984), Ind., 460 N.E.2d 1217. However, such holdings of these cases are no longer controlling precedent because they were based upon an express statutory prohibition of such amendments, formerly Ind. Code § 35–3.1–1–5(e) (Burns 1979), which was repealed effective September 1, 1982.

■ Even if we assume, *arguendo*, that the amended information constitutes a change in substance rather than a defect, imperfection, or omission in form, it is the province of this Court to determine the proper appellate remedy upon challenge to a conviction resulting from such an amendment. The defendant claims the following resulting prejudice: "(1) [t]he incumbent prejudice that a jury infers from the theory of a State prosecution, (2) the additional State presentation of evidentiary proofs, and (3) evidentiary rulings." The State argues that there was no resulting prejudice because the amended information did not alter the availability of defenses nor the potential penalty facing the defendant. We observe that the evidence which the defendant would have anticipated upon the original charge of attempted theft would necessarily have included the evidence relevant to the amended information. Evidence showing the taking of the checks as the charged "substantial step" constituting the attempt does not materially differ from evidence of the same conduct as proof of the amended charge of theft. We are not persuaded that the defendant suffered resulting prejudice.

Because the defendant has not demonstrated sufficient resulting harm, it is therefore unnecessary to address whether the amended information was untimely filed because it involved matters of substance rather than matters constituting a defect, imperfection, or omission in form.

■ In a related argument, the defendant contends that the amended information failed to comport with Ind.Code § 35–36–6–6, which requires that if a *new prosecution* is initiated in the court to which the change of venue is taken, the information *must* state how the proceeding came into the court. Our research has failed to disclose a single case construing this statute. However, we disagree with the defendant's characterization of the charges alleged in the amended information as a "new prosecution." Arguably, the *theft* charge could constitute a "new prosecution" because it was not a crime initially charged in the original information. However, the defendant cites no authority, nor can we find any, for the proposition that the *forgery* charge (count I) is a "new prosecution." Although the forgery count was included in the amended information, the "amended" forgery count was *identi-*

*cal* to the forgery count charged in the original information. Thus, the amended forgery information was outside the scope of Ind.Code § 35–36–6–6, and it was unnecessary for the amended information to state how the proceeding came into the court to which the change of venue was taken.

■ In another collateral argument, the defendant asserts he was denied his alleged statutory right under Ind.Code § 35–36–6–4 to have the case transferred back to Morgan County. This argument fails under three rationales.

First, Ind.Code § 35–36–6–4 involves "new prosecutions," which, again, implies the dismissal of charges and subsequent refiling of new charges.

Second, the defendant never moved to transfer the case pursuant to Ind.Code § 35–36–6–4; rather, he moved to dismiss because of the State's alleged failure to comply with Ind.Code § 35–36–6–6 (discussed above).

■ Third, and perhaps most persuasive, even if the charges were deemed a "new prosecution," this Court has previously held that where some counts of an indictment were dismissed and later refiled, it was not a ground for reversal that the court did not afford defendants an opportunity to elect which county they wished to be prosecuted in where they were not prejudiced by such denial. *Pollard v. State* (1979), 270 Ind. 599, 388 N.E.2d 496. The Court in *Pollard* reasoned as follows:

> Appellants contend that the refiling of Counts I and IV constituted a new prosecution on those charges within the meaning of this statute and thus, the trial court erred by not affording them an opportunity to elect as to which county they wished to be prosecuted in. Assuming, without deciding, that appellants had a statutory right to make such an election, we fail to see how they were prejudiced by the denial of such right. If appellants had been allowed to elect, their only options would have been a choice between having the cause remain in Monroe County or having it returned to Vanderburgh County where extensive

pre-trial publicity had occurred earlier. It is also true that since the alleged new prosecution related only to Counts I and IV, the appellants, had they opted for a return to Vanderburgh County, would have been required to first defend against Counts II and III in Monroe County and then have to stand trial on Counts I and IV in Vanderburgh County; a prospect which would have been more prejudicial to appellants' rights than what actually occurred. There is thus no merit to this argument as a ground for reversal.

*Id.* at 608–09, 338 N.E.2d at 504.

Likewise, in this case the trial had been venued out of Morgan County because of adverse publicity, and the defendant has failed to show any prejudice whatsoever in not transferring the case back to Morgan County. Thus, there was no error.

■ The defendant also predicates error on the trial court's denial of his motion to strike the habitual offender information. The defendant argues that the habitual offender information was "attached" or "linked to" the original information, and since the original charges were "dismissed" and the amended charges superceded the original charges, the habitual offender information was not a valid attachment to the amended charges. The defendant cites *Griffin v. State* (1982), Ind., 439 N.E.2d 160, as his primary support for this argument; however, *Griffin* is inapposite.

■ In *Griffin,* the defendant was convicted of theft, and his sentence was enhanced by 30 years on the habitual offender determination. Griffin was originally charged in five counts, the first four charging theft and the fifth alleging the habitual offender status. The information was later amended, and the amended information alleged only one count of theft (receiving stolen property). All parties agreed that the amended information intended to and did take out all five of the original counts and was the only remaining charge against the defendant. The State subsequently filed a pleading titled "Notice of Intent to

Seek Habitual Offender Status." On appeal, this Court held that the defendant's status as a habitual criminal would be set aside because the State's notice of intent to seek habitual offender status was not under oath and did nothing more than make a statement that the State intended to submit the habitual offender question to the jury. The Court determined that the pleading was not part of the charging information and that it failed to comply procedurally with the bringing of the original charges. *Griffin* cannot be construed to stand for the proposition that an otherwise valid habitual offender charge ceases to be a part of the charging information upon the filing of an amended information. We can find no basis, nor has the defendant provided any rationale, for concluding that the amended information in this case invalidated the habitual offender count or that such a result was intended. Moreover, the defendant has failed to show any actual prejudice. The record indicates his clear awareness that the State was proceeding with the habitual offender allegation and that he had sufficient opportunity to prepare his defense. We therefore reject this argument.

### 6. Motion for Change of Judge

■ On October 4, 1984, the defendant filed a verified motion for change of judge, alleging bias and prejudice on the part of the trial judge and stating his belief that "the judge in this case has taken a personal association with extra judicial information concerning [defendant] that interferes with his independent judgment in this cause of action, as reflected by the September 28, 1984 docket sheet entry." The September 28, 1984 docket sheet entry reads as follows:

> The Court overrules defendant's Motion for Court to Issue Order to Transport because the repeated escape attempts of the defendant make him a serious security risk at the Putnam County Jail. The Court further orders that any defense depositions be taken by stand-by counsel, Michael E. Hunt, of only those witnesses listed as State witnesses. The deposition of any other person shall only

be allowed upon sufficient showing of demonstrated materiality in their testimony and that there is a legitimate defense interest in said deposition.

On October 8, 1984, the court denied the defendant's motion without conducting a hearing. The defendant asserts that the trial court's summary denial of the motion constituted reversible error and cites *Wilson v. State* (1984), Ind.App., 472 N.E.2d 932, for the proposition that a trial court is required to hold a hearing as a mandatory prerequisite to the denial of a defendant's motion for change of venue from a judge based on a judge's alleged bias and prejudice. The State argues that the defendant's motion failed to state a sufficient factual basis establishing grounds for a change of judge, thus precluding the necessity for a hearing.

Resolution of this issue requires an application of Criminal Rule 12, which provides in relevant part:

> Provided, however, that if the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, he may file the application, which shall be verified by the party himself specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten [10] days, and after a hearing on the motion, the ruling of the court may be reviewed only for abuse of discretion.

Both the relevant case law and the plain language of Criminal Rule 12 support the notion that a hearing is required upon a proper motion for change of judge. *See, e.g., Wilson*, 472 N.E.2d 932. This hearing requirement, however, does not ripen unless the motion complies with Criminal Rule 12.

It is undisputed that bias or prejudice of a trial judge undermining a defendant's ability to obtain a fair trial constitutes ade-

quate grounds for a change of judge. Ind. Code § 35–36–5–2. In the defendant's verified motion, he properly reveals when the alleged bias or prejudice was discovered, and the means by which he discovered it. However, we agree with the State that the defendant failed to allege specific facts supporting his belief that the trial judge was biased or prejudiced. The September 28 docket sheet entry merely reveals a ruling adverse to the defendant, and the trial judge's knowledge of the defendant's escape attempts is also insufficient to support the conclusion that the judge was biased or prejudiced. In short, the defendant has failed to allege any specific facts to support his belief that the trial judge had "a personal association with extra judicial information" which interfered with his independent judgment in any way. Thus we find no error in the summary denial of the defendant's motion in this case.

### 7. Motion for Discharge

■ On June 22, 1984, the defendant filed five motions, including a "Motion to Discharge and for Evidentiary Hearing" based on the allegation that the probable cause determination in this case was not made by a neutral and detached magistrate. On July 9, 1984, the trial court scheduled and conducted a hearing on all pending motions, during which the defendant failed to present evidence or argument in support of the motion to discharge. The trial court did not rule on the motion. On August 7, 1984, the defendant filed with the Putnam Circuit Court Clerk, pursuant to Trial Rule 53.1, a Praecipe for Removal of the case from the jurisdiction of the Putnam Circuit Court. The defendant contended that because the trial court failed to rule on the motion for discharge within thirty days, as required by Trial Rule 53.1(A), he was entitled to have the case withdrawn from the Putnam Circuit Court and have a special judge appointed. At a scheduled hearing held later on the day of August 7, the defendant objected to the trial court's jurisdiction based upon the allegations presented in his praecipe for removal. The trial court ruled that the praecipe was filed prematurely and then

denied the defendant's pending motion for discharge. The defendant now argues that the trial court erred in ruling on his praecipe for removal and contends that the trial court was without jurisdiction over the case after August 7, 1984. This argument is without merit.

The thirty-day requirements established in Trial Rule 53.1(A) are that a trial court must 1) *set a motion for hearing within thirty days,* or 2) *if the court fails to rule on a motion within thirty days after it was heard,* or 3) if no hearing on the motion was required, and thirty days have expired after it was filed, then upon application of an interested party, the case may be withdrawn from the trial judge and transferred to the Supreme Court for the appointment of a special judge. The defendant filed his motion for discharge on June 22, and the trial court held a hearing on July 9. Thus, the court had until August 8 (thirty days after the July 9 hearing) to rule on the motion. The defendant's August 7 praecipe for removal was filed prematurely, and the trial court's ruling on the motion to discharge complied with the thirty-day time limit prescribed in Trial Rule 53.1. There is no error here.

### 8. Discovery Request

■ In late February 1984, the prosecutor in this case received from a confidential informant in a state penal institution a letter that allegedly contained exculpatory information critical to the defendant's case. The defendant sought to discover the letter, and the State resisted on the grounds that the information in the letter was double hearsay; it was irrelevant to the issues of the defendant's guilt or innocence; and the State had a paramount interest in non-disclosure of the informant's identity. The trial judge reviewed the letter *in camera* and denied the defendant's request but included the letter, with the signature deleted, in the record for purposes of this appeal. The defendant contends the trial court's ruling deprived him of due process and his sixth amendment right to confrontation and evidences a discovery imbalance in favor of the State.

The letter in question states that the informant had a conversation with another inmate wherein the other inmate related a conversation the other inmate had with defendant Kindred in which Kindred disclosed that he and Joseph Barker (Kindred's former employer and the victim in this case) had engaged, at some unknown time, in a joint effort to effect Kindred's escape from jail.

The three major criteria to be considered by a trial court when called upon to decide questions concerning the discovery capabilities of a criminal defendant are: 1) there must be a sufficient designation of the items sought to be discovered; 2) the item sought to be discovered must be material to the defense; and 3) if these first two factors are satisfied the trial court must grant the discovery motion unless the State makes a showing of paramount interest in non-disclosure. *Rowe v. State* (1974), 262 Ind. 250, 314 N.E.2d 745; *Sexton v. State* (1972), 257 Ind. 556, 276 N.E.2d 836. There is no question here that the defendant satisfied the first criterion by requesting the letter with sufficient particularity. As to the second factor, the defendant emphasizes the value of the letter for the purpose of impeaching Barker's testimony. We decline to find an abuse of discretion by the trial court in denying the defendant's discovery request.

As for the defendant's argument that the trial court's ruling evidenced a discovery imbalance in favor of the State, this contention is simply not supported by the record. He alleges that the trial court compelled him to turn over all of his files to the State. This is an inaccurate characterization. The trial court merely ordered disclosure of all documents that the parties intended to introduce at trial.

We find no merit in the defendant's arguments with respect to this issue.

### 9. Pro Se Defendant's Taking of Depositions

On August 7, 1984, the trial court granted the defendant's motion to proceed as his own counsel and appointed Deputy Public Defender Michael Hunt as stand-by counsel. On September 27, 1984, the defendant filed a motion requesting transport from the Pendleton Reformatory to the Putnam County Jail for the purpose of deposing numerous witnesses on October 10 and 11, 1984. Due to the defendant's repeated escape attempts, the trial judge deemed the defendant a serious security risk and denied the request for transport. The court also ruled that the defendant's stand-by counsel could depose State witnesses but that any other persons could be deposed only upon a sufficient showing of demonstrated materiality of their testimony to the defendant's case. The defendant responded by filing a written "Notice to Stand-by Counsel of Non–Consent" ordering stand-by counsel "not to interfere with the defendant's control over the defense of this case by complying with the Court's order on taking of depositions" and a "Written Objection to Court's Entry and Denial of Defense Preparation." The defendant now contends that the trial court's ruling violated his sixth amendment right to defend; his right to a fair trial, and his fourteenth amendment rights to due process, fundamental fairness and equal protection.

The objective of pre-trial discovery is to promote justice and to prevent surprise by allowing the defendant adequate time to prepare his case. *Campbell v. State* (1986), Ind., 500 N.E.2d 174. As Justice Jackson observed in *Johns v. State* (1968), 251 Ind. 172, 179, 240 N.E.2d 60, 64, "it is axiomatic that an accused is not justly and fairly tried when his counsel is compelled to maneuver in a factual vacuum." Although discovery in criminal cases is a "two way street," *Morris v. State* (1984), Ind., 471 N.E.2d 288, and a criminal defendant generally has the right to depose prosecution witnesses, *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228, the trial court has wide discretionary latitude in discovery matters as part of its inherent power to guide and control the proceedings. *See, e.g., Tinnin v. State* (1981), 275 Ind. 203, 416 N.E.2d 116 (denial of defendant's motion to depose state witness was proper exercise of trial court's inherent power to

prevent discovery from unjustifiably delaying proceedings).

▮▮▮▮ Contrary to the defendant's assertion, the trial court's ruling here does not evidence an imbalance in the discovery process in contravention of the dictates of *Wardius v. Oregon* (1973), 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (striking state statute requiring a defendant to give pre-trial notice to prosecution of his alibi defense and alibi witnesses, unless reciprocal discovery rights were given to the defendant). Rather than prohibiting depositions, the trial court merely delineated the means of taking depositions due to the defendant's proclivity for attempting to escape. The defendant asserts an absolute right to have conducted the depositions himself, but nothing in any of his cited authority supports such a proposition. Moreover, we agree with the State that he waived his argument here by ordering stand-by counsel not to take the depositions as allowed by the trial court. Discovery is not required under the due process clause of the Constitution, *Johnson v. State* (1971), 255 Ind. 589, 266 N.E.2d 57, and a defendant may waive any pre-trial discovery rights by failing to exercise or pursue them. *Gubitz v. State* (1977), 172 Ind.App. 343, 360 N.E. 2d 259. Finally, the defendant has failed to support his bald assertion that he was prejudiced as a result of the trial court's ruling. He suggests that stand-by counsel was unaware of the questions upon which to depose the State witnesses; however, there is no indication that prior to the scheduled depositions, the defendant's capacity to confer with stand-by counsel was curtailed in any way.

In light of the foregoing, we reject the defendant's arguments.

### 10. Handwriting Exemplars

The issues the defendant raises here are identical to those presented in *Kindred v. State* (1988), Ind., 524 N.E.2d 279, involving handwriting exemplars. He presents no authority or rationale different from that already considered by this Court. We have reconsidered our conclusions and decline to modify our holding. There is no error.

### 11. Motion to Strike Jury Panel

▮▮▮ During the jury selection process, the following colloquy occurred in the presence of the jury panel:

Court: Mr. Kindred, at this time you may have an opportunity to examine the prospective jurors.

Kindred: At this time your Honor, the defense will maintain for the record that was just made outside the presence of the jury that it's unprepared to conduct voir dire.

Court: Alright, you've had quite a few months to prepare for trial here, the fact that you've elected to prepare for another trial rather than this one is a decision that you've made yourself and in consultation with your stand-by counsel. The Court has had this matter set for trial since August on December the tenth, today. We are proceeding with trial.

Kindred: For the record, your honor, the defense objects to the Court's mention of another trial before the jury panel and moves to strike the jury panel.

Court: That will be overruled.

Kindred: Thank you.

Court: This matter is proceeding to trial as scheduled. Your Motion for Continuance has been overruled. Mr. Kindred I want to tell you that you elect not to perticipate [sic] in this trial, that you have to accept the consequences of your non-participation. And I want to make sure you understand that I'm giving you every opportunity to examine these prospective jury members. If you elect not to that's the consequences of that act are something that you may have to suffer. Do you understand that? The record will reflect that the defendant chooses not to answer.

In a subsequent hearing outside the presence of the jury panel, the trial judge, apparently recognizing the impropriety of referring to the defendant's involvement in another trial, made the following offer:

Court: Also, while that's being done, Mr. Kindred, I did make a remark to the jury concerning your election to prepare for another trial. But I didn't say what kind of a trial it was, whether it was criminal or a uh civil trial. And I'd prefer not to bring it to the jury's attention any more, however, if at this time you desire that I admonish the jury not to consider that, I'd be glad to do so. The record will show that the defendant does not request an admonishment. Over the defendant's objection, we'll commence with opening statements after lunch at one o'clock and with the presentation of the State's evidence and case in chief.

The defendant predicates error on the trial court's refusal to strike the jury panel and claims that the ruling placed him in grave peril and undermined his right to a fair trial before an impartial tribunal.

■ The State points out that a jury admonishment is presumed to cure trial irregularities of the type that occurred here; thus, the defendant's rejection of the trial court's offer to admonish constituted a waiver of the error. We agree. *See Boyd v. State* (1982), Ind., 430 N.E.2d 1146 (refusal of offer to admonish jury to disregard unsolicited reference to other offenses constituted waiver of any denial of mistrial motion). Notwithstanding the waiver, however, we are persuaded that the argument fails on the merits as well.

The defendant, citing *United States v. Hillard* (2d Cir.1983), 701 F.2d 1052, *cert. denied*, 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318, points out that extra-record information that comes to the attention of a juror is presumptively prejudicial. The court in *Hillard* also recognized, however, that "[t]he touchstone of decision in a case such as we have here is thus not the mere fact of infiltration of some molecules of extra-record matter, ... but the nature of what had been infiltrated and the probability of prejudice." 701 F.2d at 1064 (quoting *United States ex rel. Owen v. McMann* (2d Cir.1970), 435 F.2d 813, 818, *cert. denied* (1971), 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed. 2d 646). This Court echoed a similar view in *Davis v. State* (1981), 275 Ind. 509, 418 N.E.2d 203, wherein we held that in determining whether a trial irregularity mandates reversal, the gauge is not exclusively the way in which the testimony entered the case but rather the probable impact of the irregularity on the verdict. *See also Short v. State* (1982), Ind., 443 N.E.2d 298 (in determining whether error in introduction of evidence warrants reversal, it is duty of Supreme Court to assess its probable impact on the jury). Although we are not dealing here with testimony of a witness, a similar evaluation may be made with respect to the trial judge's reference in this case.

In the instant case, the jury heard only a vague reference to the defendant's involvement in another trial. As the trial judge noted, there was no mention of whether the other trial was criminal or civil. The defendant declined the trial court's offer to admonish the jury to disregard the reference and thereby waived his opportunity to gain the benefit of the curative effect that would arguably have been enhanced by the trial court's final instruction no. 18, which provides in part:

You must not consider an exhibit or testimony which the Court has ordered stricken from the record. In fact, such matter is to be treated as though you had never heard of it.

Nothing that I have said during the trial was intended as any suggestion of what facts or what verdict you should find. Each of you, as jurors, must determine the facts and the verdict.

■ Finally, as the State points out, the evidence of the defendant's guilt in this case was overwhelming, and we conclude beyond a reasonable doubt that the reference to his involvement in another trial had no probable impact on the verdict. We find no error on this issue.

### 12. *Motion for Continuance*

The defendant was originally charged on February 17, 1984. On August 16, 1984, the trial court granted his request for a continuance and set December 10, 1984, as the new trial date. On November 26, 1984,

the defendant filed a motion for continuance based on his having another trial scheduled, pursuant to the speedy trial rules, for December 10 in Monroe County. That motion was denied the same day on the grounds that the instant trial had been scheduled first. On December 5, 1984, he again filed a motion for continuance based on his unpreparedness and the conflicting trial dates, and again the motion was denied. On December 6, 1984, the defendant was informed that the trial in Monroe County had been continued. Immediately prior to the beginning of the the trial in this case, on December 10, 1984, he again moved for a continuance based on his unpreparedness and an alleged "imbalance of discovery created by the Court's refusal to permit the defendant to depose witnesses." This motion was also denied, and the trial proceeded as scheduled.

The State's first witness testified that she had given a taped statement to police during the investigation of this case. Outside the presence of the jury, the defendant admitted receiving a copy of the statement approximately 10 minutes before the trial. He asserted that such late disclosure of the statement violated the discovery order; thus, he was entitled to a mistrial or, alternatively, to have the witness's testimony excluded (this issue is addressed *infra*) or to have the trial continued. These motions were also denied.

In *Bryan v. State* (1982), Ind., 438 N.E. 2d 709, 714, we stated:

A motion for continuance based upon non-statutory grounds, such as an alleged need to have more time for trial preparation, is addressed to the trial court's discretion. *Drollinger v. State* (1980), [274] Ind. [5], 408 N.E.2d 1228, 1231; *Hemphill v. State* (1979), [270 Ind. 590] 387 N.E.2d 1324, 1326. However, granting continuances in order to allow more time for preparation is generally not favored without a showing of good cause and will only be granted in the furtherance of justice. *Miller v. State* (1978), 267 Ind., 635, 638, 372 N.E.2d 1168, 1170; *Carlin v. State* (1970), 254 Ind. 332, 335, 259 N.E.2d 870, 872. Whether good cause has been shown

rests within the sound discretion of the trial judge and will be disturbed only if there is a clear showing of an abuse of discretion. *Miller v. State* (1971), 256 Ind. 296, 268 N.E.2d 299; *Jay v. State* (1965), 246 Ind. 534, 206 N.E.2d 128. In determining whether good cause exists, the trial judge may look to the circumstances of the case as well as the allegations of the motion and is not required to grant the motion simply because it complied with Ind.R.Tr.P. 53.4. *Miller v. State* (1978), 267 Ind. 635, 372 N.E.2d 1168; *Hooks v. State* (1977), 266 Ind. 678, 366 N.E.2d 645.

■ With respect to the defendant's first three attempts to have the trial continued, he contends that he was *unable* to prepare an adequate defense and that the resulting prejudice was "obvious": he was "unable" to engage in the jury voir dire process, to exercise any peremptory challenges, to present an opening argument, to cross-examine prosecution witnesses, to present any witnesses in his defense, to present a final argument or to submit any final instructions. His lack of participation in the trial was not a reflection of an *inability* to participate, however, but rather his *refusal* to participate. It is clear that adequate time (10 months) was provided to allow the defendant to prepare a defense. As the State points out, the defendant was aware of the exact trial date for more than four months. He voluntarily proceeded as his own counsel and consciously refused pre-trial discovery assistance from his "stand-by" counsel.

The defendant also claims error in the denial of his motion for continuance due to "assisting" counsel's unpreparedness and contends that he was denied effective assistance of counsel. This argument is similar to that unanimously rejected by this Court in *Carter v. State* (1987), Ind., 512 N.E.2d 158, wherein a *pro se* defendant was barred from asserting a sixth amendment claim of ineffective assistance of counsel because such a claim would in effect be an allegation of his own ineffectiveness.

■ With respect to his request for a continuance to review the State witness's pre-trial statement for purposes of cross-examination, the defendant has failed to demonstrate any prejudice as a result of the trial court's denial. He fails to point to any inconsistencies between the recorded statements and the testimony at trial and fails to suggest how a continuance would have benefitted his position.

Under the circumstances of this case, we sense no abuse of the trial court's discretion in denying the defendant's motions.

### 13. Motion to Exclude Testimony

■ During the initial stages of the State's case in chief, the defendant moved to suppress the testimony of four key prosecution witnesses on the ground that the State failed to disclose until moments before trial the pre-trial statements of those witnesses. He alleges that the State's withholding violated the trial court's discovery order. The defendant predicates error on the denial of his motion to suppress and contends that exclusion of the witnesses' testimony was "the only possible sanction to impose which would have permitted a fair trial proceeding." In response, the State points out that the defendant received the statements from the Monroe County prosecutor four months prior to trial in connection with another case. Moreover, Kindred was fully aware of the witnesses' expected testimony; thus, he was not prejudiced in any way. These contentions by the State, however, are based only upon the prosecutor's unsupported statements to that effect made in response to the defendant's motion to suppress. There is nothing else in the record indicating that the defendant actually received the statements four months earlier, and although he neither confirms nor denies receiving them, we are reluctant to conclude on appeal that he *did* actually receive them.

The defendant argues that the State's failure to disclose the statements until moments before trial constituted an imbalance in the discovery procedure in violation of the due·process clause as construed in *Wardius v. Oregon* (1973), 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82, wherein the United States Supreme Court struck down a state statute requiring a defendant to give pre-trial notice to the prosecution of his alibi defense and alibi witnesses. The statute did not comport with due process requirements because it did not provide for reciprocal discovery rights granting a defendant an opportunity to discover the prosecutor's alibi witnesses. The issue presented by the defendant here has nothing to do with an imbalance in the discovery procedure prescribed by the trial court but rather with the State's alleged non-compliance with the discovery order and the appropriate sanctions for such non-compliance (discussed below).

■ The defendant also intimates that the Constitution has bestowed upon him some type of an unconditional right to pre-trial production of all witness statements, but none of his cited authority stands for such a proposition. He confuses this purported right with the right to production of a witness's pre-trial statement upon the showing of a proper *Antrobus*-type foundation. *See Antrobus v. State* (1970), 253 Ind. 420, 254 N.E.2d 873.

■ The defendant also cites *Giglio v. United States* (1972), 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104, for the proposition that the material was required to be produced under the dictates of *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. In *Giglio*, the Supreme Court reversed a conviction secured in part by the testimony of a co-conspirator who falsely denied on the stand that he had made a deal with the state in exchange for his testimony. The state did not solicit the false testimony, yet it allowed it to go uncorrected when it appeared. In the instant case, there is no allegation of false testimony, nor is there any allegation that the statements in question contained any false, inconsistent, or exculpatory material. In short, *Giglio* and *Brady* are irrelevant to the issue here.

The defendant also contends that the State's failure to produce the statements on a timely basis limited his ability to effec-

tively cross-examine the witnesses. The defendant presents no allegation of any inconsistencies between the pre-trial statements and the testimony at trial; thus, we fail to see how earlier disclosure could have assisted the defendant in cross-examination or impeaching the witnesses' credibility.

[34, 35] The trial court is given wide discretionary latitude in discovery matters. Absent clear error in its decision, it will not be overturned. *Williamson v. State* (1982), Ind., 436 N.E.2d 90. Where there has been a failure to comply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated. *Armstrong v. State* (1986), Ind., 499 N.E.2d 189. Sanctions for failure to comply with discovery are within the trial court's discretion; however, the primary factors of consideration are whether the breach was intentional or in bad faith and whether substantial prejudice resulted. *Wiseheart v. State* (1986), Ind., 491 N.E.2d 985.

■ In the instant case, the defendant has failed to establish or even allege that the statements in question contained any false or exculpatory material. Nor are we directed to any inconsistencies between the statements and the testimony presented at trial. The record is devoid of any indication that the State's purported failure to comply with the discovery order was either intentional or in bad faith. Moreover, even assuming there was non-compliance, we fail to discern any prejudice to the defendant as a result.

The trial court's refusal to suppress the testimony does not warrant reversal.

### 14. Motion for Mistrial

■ The defendant claims reversible error resulted from the trial court's denial of his motion for mistrial made after the jurors purportedly observed the defendant handcuffed and behind bars in a security area near the courtroom. The defendant declined the trial judge's offer to admonish the jury, contending that the admonishment would not cure the prejudicial impact.

■ A defendant has a right to appear before a jury free from shackles or other physical restraints unless such measures are necessary to prevent the escape of the accused, to protect everyone in the courtroom, and to maintain order during the trial. *Walker v. State* (1980), 274 Ind. 224, 410 N.E.2d 1190 (citing *Illinois v. Allen* (1970), 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed. 2d 353). The accused's freedom from shackles is an important component of a fair and impartial trial; however, essential fairness is not necessarily lost by the jurors' observation of him in a restrained state while he is being transported from the jail to the courtroom. *Malott v. State* (1985), Ind., 485 N.E.2d 879. Jurors would reasonably expect that anyone in police custody would be restrained, regardless of the precise nature of the charge against the accused. *Id. See also Johnson v. State* (1977), 267 Ind. 256, 369 N.E.2d 623, *cert. denied* (1978), 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791.

The defendant's argument here seems to rest on the bald assertion that the jury's view of him in handcuffs unduly prejudiced his case and denied him a fair trial and the opportunity to effectively represent himself. We fail to discern any harm to the defendant, because reasonable jurors could expect him to be in police custody while not in the courtroom. Moreover, the record indicates that the defendant had engaged in numerous prior escape attempts, thereby justifying greater precautions in the interest of security. There is no indication that the jury observed the defendant restrained in any way during any of the actual court proceedings. We find no abuse of the trial court's discretion in denying the defendant's motion for a mistrial. Under the circumstances presented here, the fairness and impartiality of the trial were adequately preserved.

### 15. Trial Judge's Remarks

■ The defendant contends that the trial court abused its discretion in denying the defendant's motion for mistrial, which was based upon the trial court's allegedly

improper and prejudicial remarks made to the defendant during the trial.

At a bench conference between the defendant, the trial judge and the prosecutor, defendant moved to remove himself from the proceedings due to his lack of trial preparation. The trial judge admonished the defendant of the consequences of his actions and explained to the defendant that he would not allow the proceedings to be delayed any further when the following colloquy occurred:

> Court: ... And as far as your claim to be unprepared, Mr. Kindred, this case has been set for trial since August. I have given you more than enough ample opportunity to prepare. When this Court sets this case for trial, this case is gonna be tried on that date. And this is that date. And as far as the request for depositions, I ordered that those depositions be taken by Mr. Hunt, your stand-by counsel. According to Indiana case law, that's permissible.

> Kindred: For the record your Honor ...

> Court: You refused, Mr. Kindred, you refused to have Mr. Hunt take those depositions.

> Kindred: For the record, I'll object to the Court's ...

> Court: Any lack of preparation, Mr. Kindred, is strictly your own fault and you are not gonna delay the orderly administration of justice in this court.

> Kindred: For the record, I'd like to object to these proceedings in the presence of the jury.

> Court: This jury is gonna understand what you're trying to do here, Mr. Kindred.

> Kindred: I'll object to that also your Honor.

> Court: Do you have any questions that you wanted to ask the defendant?

> Kindred: We move for a mistrial your Honor.

> Court: Overruled.

The defendant asserts that the foregoing statements by the trial judge manifested bias against him, constituted "highly prejudicial character testimony," and un-dermined his right to a fair trial. His argument here seems to rest on the assumption that the jury heard the foregoing colloquy; however, the record indicates that the allegedly improper remarks were made at a bench conference outside the hearing range of the jury.

In *Palmer v. State* (1985), Ind., 486 N.E. 2d 477, this Court stated:

> The decision to grant a motion for mistrial lies within the sound discretion of the trial court. In order to establish that a denial of a mistrial motion constituted an abuse of discretion, the appellant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected. The declaration of a mistrial is an extreme action which is warranted only when no other recourse could remedy the perilous situation.

*Id.* at 483. The record in this case reveals that the allegedly objectionable remarks were made at a bench conference outside the hearing range of the jury. Furthermore, given the unique circumstances imposed upon the trial judge by the defendant, we decline to find the actions of the trial judge as constituting an abuse of discretion, nor that such actions deprived the defendant of a fair trial.

### 16. Evidence Sufficiency for Theft Conviction

▬ The defendant argues that the evidence is insufficient to support the theft conviction. Specifically, he asserts that the State failed to prove his unauthorized control over the property.

In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260,

*cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Ind.Code § 35–43–4–2(a) provides in part: A person who knowingly or intentionally exerts unauthorized control over the property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony.

The checks belonging to the defendant's employer were found in an unmarked file on the defendant's desk within his separate office. The employer's secretary recognized the unmarked file as the defendant's personal file. No other person used the defendant's office. Furthermore, the secretary identified a forged signature on one of the checks as matching the defendant's handwriting, with which she was familiar. From this evidence, a reasonable trier of fact could conclude beyond a reasonable doubt that the defendant possessed and thus controlled the property of another. The evidence is sufficient to sustain the theft conviction.

## 17. Habitual Offender Determination

The defendant raises numerous arguments challenging his conviction as a habitual offender. The first two claim that the habitual offender determination violated the double jeopardy provisions of the fifth and fourteenth amendments to the Constitution of the United States.

■ The first double jeopardy argument is predicated on defendant's prior acquittal of a habitual offender charge in Monroe County. The prior habitual offender charge alleged the same prior unrelated felonies as were alleged in the instant case. Thus, the defendant contends that the trial court erred in denying his motion to dismiss because the double jeopardy clause precludes a subsequent habitual offender determination when a prior habitual offender charge, based upon the same two prior unrelated felonies, resulted in an acquittal. This is precisely the same argument considered and rejected by this Court in *Mers v. State* (1986), Ind., 496 N.E.2d 75. The defendant presents no relevant authority or rationale not already considered in *Mers*, thus we reject this argument.

■ The defendant next argues that the underlying felonies in both cases, the forgery (uttering) and perjury charges in Monroe County and the forgery (making) charge in the instant case, involved the same victim and but a single ongoing criminal episode. The defendant contends that because the underlying felonies involved essentially the same conduct, trying him twice constituted a violation of the double jeopardy clause. The defendant's conclusion here is based on a faulty premise. The underlying felonies in the two cases did *not* involve the same conduct. Rather, the defendant engaged in distinct separate offenses at different times and in different locations. The underlying offenses in Monroe County involved the defendant's procurement of a driver's license by making false material statements under oath and his cashing of forged checks at various banks in Bloomington. The underlying offense in this case involved the *making* of a check in such a manner that it purports to have been made by another person. This was not a check for which the defendant was charged with cashing in the Monroe County case. We therefore find no merit in the defendant's second double jeopardy argument.

■ The defendant also challenges the content and validity of the habitual offender information. He contends that the trial court erred in denying his motion to strike the convictions alleged in paragraph four of the information. The convictions in question resulted from a plea agreement, and the defendant asserted that they were constitutionally invalid on their face due to the trial court's failure in the guilty plea proceedings to advise him of his privilege against self-incrimination. Thus, the defendant argues that the convictions could not be used to enhance the sentence in the instant case. The defendant's argument here is precisely the same as one addressed and rejected by this Court in *Edwards v. State* (1985), Ind., 479 N.E.2d 541, wherein Justice DeBruler explained:

In Indiana the general rule is that the alleged invalidity of predicate felony convictions may not be challenged during habitual offender proceedings when the prior final judgments are regular on their face. *Jones v. State* (1981), Ind., 425 N.E.2d 82; *Morris v. State* (1980), 273 Ind. 614, 406 N.E.2d 1187. The habitual offender hearing is not the proper forum to contest the validity of these prior convictions. *Williams v. State* (1982), Ind., 431 N.E.2d 793. The proper procedure to challenge this type of predicate conviction is for the accused to set aside the predicate conviction in a direct attack through appeal or post-conviction relief in the court of conviction. However, the accused may challenge the predicate felony conviction in a habitual offender proceeding when the conviction is constitutionally invalid. The conviction is deemed to be constitutionally invalid only when the following criteria are satisfied:

(1) The court records reflecting the proceedings which led to the prior conviction, on their face, must raise a presumption that the conviction is constitutionally infirm; and

(2) The apparent constitutional infirmity must be of the type which undermines both the integrity and reliability of the determination of guilt. Where the conviction is based upon a guilty plea, the infirmity must affect that part of the guilty plea which constitutes the admission of guilt. In this case, the record does not affirmatively show that appellant was advised of his privilege against self-incrimination or of his right to confront his accusers. This predicate felony conviction thus raises a presumption of constitutional infirmity in satisfaction of the first criterion. *Stone v. State* (1982), Ind., 437 N.E.2d 76; *Haynes v. State* (1982), Ind.App., 436 N.E.2d 874. A defendant would satisfy the second criterion where it can be shown, for instance, that the defendant was not represented by counsel or knowingly and intelligently waived such representation at the time of the prior felony conviction. However, a *Boykin* violation affects only the waiver part of the guilty plea and does not undermine the integrity and reliability of the determination of guilt. Therefore, there is no denial of due process in relegating defendant to a direct attack to set aside the prior conviction. Furthermore, we see no serious erosive effect from our direct attack preference upon the rights safeguarded by *Boykin*.

479 N.E.2d at 547–48. Even assuming, *arguendo*, that the transcript of the guilty plea hearing at issue was devoid of an advisement concerning the privilege against self-incrimination, the defendant here, as in *Edwards*, failed to satisfy the second criterion. The transcript of the guilty plea hearing reveals that the defendant was represented by counsel and that he voluntarily admitted the factual basis supporting the convictions in question. Thus, in the instant case, the trial court's denial of his attempt to challenge the prior unrelated felony convictions was proper.

██ The defendant claims that the trial court erred in denying his motion to strike the entire habitual offender information. The defendant claims that the information was fatally defective in form and failed to properly notify him of the nature and essential elements of the charge.

██ While the habitual offender charge is not a separate offense under the penal code, it is subject to the rules governing charging of criminal offenses. *Anderson v. State* (1982), Ind., 439 N.E.2d 558. In *Griffin v. State* (1982), Ind., 439 N.E.2d 160, 165, this Court reaffirmed the holding in *Lawrence v. State* (1972*)*, 259 Ind. 306, 286 N.E.2d 830, and its progeny by stating:

[T]he allegations of habitual criminal must contain all of the procedural matters and safeguards of the original and underlying charges in that they are brought by sworn affidavit contained in an information and endorsed by the prosecuting attorney, setting out the facts sufficient and adequate for the defendant to defend himself and giving the defendant an opportunity to plead to such allegations.

Here, the State filed its Motion to Amend the information on May 24, 1984, well before the December 11, 1984, habitual offender determination. The State's motion sought to have the defendant sentenced as a habitual offender and alleged that the defendant had accumulated two prior unrelated felony convictions. Attached to the State's motion was a separate sheet titled "INFORMATION—Habitual Offender—IC 35–50–2–8" and listing defendant's specific prior convictions and sentencing dates. Accompanying this sheet was a two-page probable cause affidavit wherein the affiant reiterated the defendant's prior felony convictions and stated that based upon the foregoing, he had good cause to believe that the defendant had accumulated two or more prior felony convictions and that the defendant is a habitual offender as defined in Ind.Code § 35–50–2–8.

The defendant claims that the information failed to comport with due process standards because it contained no allegation that the prior felony convictions were unrelated, nor did it advise him that he was being charged as a habitual offender. His argument here is apparently based on his evaluation solely of the page titled "INFORMATION—Habitual Offender—IC 35–50–2–8." Viewing that sheet as the entire habitual offender information, we would agree that it suffers from a fatal deficiency. However, the defendant's argument is flawed by his perception of the single sheet as the entire information. Under the circumstances, the accompanying affidavit should be viewed as part of the habitual offender information. This would comport with the holding in *Parrish v. State* (1983), Ind., 453 N.E.2d 234 (although information did not allege that the prior felonies were unrelated, the accompanying notice alleged unrelatedness, thereby adequately advising defendant of the charge and enabling him to prepare his defense). *See Also Murphy v. State* (1986), Ind., 499 N.E.2d 1077 (habitual offender count typed on a separate piece of paper attached to a page labeled "Amended Information" which recounted the prior unrelated offenses). Despite the defendant's allegations, we conclude that the information and accompanying affidavit combined to sufficiently apprise him of the nature of the charge and to enable him to anticipate the proof and prepare his defense in advance of trial.

The defendant contends that the instructions and verdict form incorrectly informed the jury that it could find habitual offender status from two prior felony convictions for which the defendant was convicted and sentenced on the same day. This would be true if there had been no other prior felony convictions. A habitual offender determination cannot stand where the second predicate offense was not proven to have been committed after sentencing on the first. *Smith v. State* (1987), Ind., 514 N.E.2d 1254. However, as observed by Chief Justice Shepard's concurring opinion in *Richards v. State* (1989), Ind., 535 N.E. 2d 549, 551, where multiple prior felony convictions are proven, two of which are not "unrelated" to each other, they are in effect alternative proofs either of which in combination with a separate prior unrelated felony conviction may prove habitual offender status.

Through the use of the verdict form provided, the jury expressly found the defendant to be a habitual offender and that the State had proven beyond a reasonable doubt that the defendant had accumulated the following felony convictions: (1) robbery while armed with a dangerous or deadly weapon; (2) theft; (3) forgery; and (4) "[c]arrying a pistol without a license, and aggravated assault and battery with intent to kill."

The two offenses grouped in (4) above referred to separate counts in the same proceeding. The defendant correctly points out that the charge of assault and battery with intent to kill was dismissed and that he was convicted upon his plea of guilty to aggravated assault and battery. The defendant contends that the jury thereby erroneously found him "to be a habitual offender based upon a prior felony conviction that did not exist at law."

During the habitual offender phase of the trial, evidence was presented which

established the following prior felony convictions:

1. forgery (offense committed March 28, 1968; sentence imposed June 3, 1968)

2. theft (offense committed April 2, 1968; sentence imposed June 3, 1968)

3. armed robbery (offense committed September 25, 1971; sentence imposed March 16, 1973)

4. carrying a pistol without a license and aggravated assault and battery (offenses committed June 10, 1973; sentence imposed December 14, 1973).

Because of the absence of the requisite sequence of commission following prior sentencing, the convictions for forgery and theft are not prior unrelated felony convictions with respect to each other. This is likewise true for the two convictions for which sentence was imposed on December 14, 1973. However, in combination with the armed robbery conviction, any one of the convictions imposed June 3, 1968, or the unlicensed weapon conviction imposed December 14, 1973, establishes proper support for the habitual offender determination.

Thus, notwithstanding the inaccurate finding of a prior conviction for "Aggravated Assault and Battery with Intent to Kill," the habitual offender finding remains amply supported.

■ The defendant also contends that the jury verdict form violated the double jeopardy clause because it allowed specific individual findings of guilt as to the prior felony convictions. The jury was provided with two alternative verdict forms. One was to be used if the State failed to prove habitual offender status. The second form, supplied for use in the event the jury found the defendant to be a habitual offender, required the jury to identify which of several charged prior unrelated felony convictions were proven. We reject the defendant's claim that the verdict form improperly required the jury to find the defendant guilty of each prior offense for which he had already been convicted.

■ The defendant next challenges the habitual offender charge on equal protection grounds and contends that the trial court erred in summarily denying his motion to dismiss the allegedly unconstitutional habitual offender count without a hearing. This argument rests on the allegation that the habitual offender charge in this case represents "selective enforcement" against the defendant because he is of the male gender.

■ A defendant alleging an equal protection violation has the burden of proving the existence of purposeful discrimination. *McCleskey v. Kemp* (1987), 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262; *Jones v. State* (1983), Ind., 449 N.E.2d 1060.

A corollary to this principle is that a criminal defendant must prove that the purposeful discrimination "had a discriminatory effect" on him. (citation omitted) Thus, to prevail under the Equal Protection Clause, [defendant] must prove that the decisionmakers in *his* case acted with discriminatory purpose. [Emphasis in original]

*McCleskey*, 481 U.S. at 292, 107 S.Ct. at 1766, 95 L.Ed.2d at 278. The record is devoid of any evidence supporting an inference that gender was a factor in charging the defendant as a habitual offender. Recognizing that in *Havens v. State* (1981), Ind., 429 N.E.2d 618, this Court rejected an identical claim because of a similarly insufficient record, the defendant here claims to have been improperly precluded from presenting evidence to support his argument because of the trial court's summary denial of his motion to dismiss. Under the circumstances here, the trial court was not compelled to conduct such a hearing.

Ind.Code § 35–34–1–8 provides in part as follows:

(a) ... If the motion [to dismiss under Ind. Code § 35–34–1–4] is expressly or impliedly based upon the existence or occurrence of facts, the motion shall be accompanied by affidavits containing sworn allegations of these facts. The sworn allegations may be based upon personal knowledge of the affiant or upon information and belief, provided that in the latter event the affiant dis-

closes the sources of the information and the grounds for the belief....

(e) The court may deny the motion without conducting a hearing only if: ...

(2) The motion is expressly or impliedly based upon the existence or occurrence of facts, and the motion does not contain sworn allegations supporting all the essential facts;....

The defendant's motion and sworn statement contain only a bald assertion that the habitual offender count was selectively charged in this case and that the defendant has records showing that from the year 1897 through the year 1981, no female was sentenced as a habitual offender. It is not accompanied by sworn allegations based on personal knowledge or disclosing sources of information and grounds for belief that gender was a factor in charging him as a habitual offender in this case. Moreover, a mere showing that no females were sentenced as habitual offenders in Indiana prior to 1981 would alone be insufficient to support the defendant's equal protection claim. The summary denial of the defendant's motion to dismiss was proper.

### 18. Defendant's Withdrawal from Trial Proceedings

■ Due to his purported unpreparedness to proceed with the trial, the defendant moved to withdraw from the trial proceedings. After assuring the court that he understood the consequences and pitfalls of his decision to withdraw, the defendant alerted his assisting counsel to remain and raise appropriate objections for purposes of appeal. The court granted his request, and the defendant removed himself from the courtroom for the remainder of the trial.

The defendant contends that his withdrawal was involuntary; thus he was denied his constitutional right to appear at every stage of the proceedings. He analogizes his position to that of the defendant in *Simmons v. United States* (1968), 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, wherein the Supreme Court found it intolerable that one constitutional right should have to be surrendered in order to assert another. In the instant case, the defendant asserts that he was "placed in a position of untenable tension between his constitutional rights." The thrust of his argument seems to be that he surrendered his right to be present at trial because of his inability to competently represent himself and receive a fair trial. Thus, he concludes that his withdrawal "cannot be considered voluntary in the constitutional sense." Specifically, the defendant states that he involuntarily waived his right to confront his accusers, his right to present evidence on his own behalf, and his right to counsel.

■ A defendant who chooses to exercise his right to proceed *pro se* must accept the burden and hazards incidental to his position. *Jenkins v. State* (1986), Ind., 492 N.E.2d 666; *Engle v. State* (1984), Ind., 467 N.E.2d 712. The defendant was afforded every reasonable safeguard for the protection of his constitutional rights. He was provided adequate opportunity to prepare and present a defense but voluntarily elected to embark on a course distinctively marked by his own dilatory tactics and unproductive procedures. His alleged unpreparedness was self-inflicted and appears to be no more than a vain attempt to acquire another continuance. The defendant articulated a clear understanding and an unequivocal waiver of his constitutional rights. Following the defendant's withdrawal from the proceedings, the defendant's assisting counsel actively participated in the trial by making objections, motions and stipulations. The record simply does not support the defendant's claim of involuntariness or his allegations of unfairness.[1]

---

1. The defendant is no stranger to trial and appellate procedures. *See, e.g., Kindred v. State* (1988), Ind., 524 N.E.2d 279; *Kindred v. State* (1988), Ind., 521 N.E.2d 320; *Kindred v. State* (1987), Ind.App., 514 N.E.2d 314; *Kindred v. State* (1986), Ind.App., 493 N.E.2d 467; *State ex rel. Kindred v. Morgan Circuit Court* (1983), Ind., 455 N.E.2d 328; *Kindred v. State* (1977), 173 Ind.App. 624, 365 N.E.2d 776; *Kindred v. State* (1977), 172 Ind.App. 645, 362 N.E.2d 168; *Kindred v. State* (1974), 160 Ind.App. 418, 312 N.E.2d 100; *Kindred v. State* (1970), 254 Ind. 127, 258 N.E.2d 411; *Kindred v. State* (1970),

The defendant urges that he never waived his right to be present during the habitual offender phase of the trial; thus, the resulting enhancement of his sentence was in violation of his right to be present at that separate critical stage of the proceedings. Although the record does not show a waiver expressly directed to the habitual offender phase of the trial, such a waiver must be inferred from the defendant's voluntary withdrawal from "further proceedings." There is no question that the defendant was aware that he was charged as a habitual offender and that the determination would be made in a bifurcated proceeding commencing immediately after the conclusion of the guilt phase. The defendant was specifically advised that if he withdrew from the trial, he would be transported back to jail and the trial would proceed without him. There is no indication that the defendant ever sought to withdraw his waiver of his right to be present. We reject the defendant's argument and hold that the record adequately establishes that the defendant intelligently and voluntarily waived his right to be present at both phases of the trial.

### 19. Presence of Witness During Conference

 The defendant contends that the trial court violated its position of neutrality and thereby denied the defendant his right to a fair trial because Judge James E. Harris, a State's witness in the habitual offender phase of the trial, was present in the trial judge's chambers when the habitual offender instructions were discussed. The record indicates that the defendant's "assisting" counsel and the prosecuting attorney were also present at the conference. There is no indication that Judge Harris participated in the conference, and we are unpersuaded that his presence evidences any prejudice on the part of the trial judge.

The defendant cites no authority for the proposition that Harris's presence warrants reversal, nor do we sense any prejudice accruing to the defendant as a result.

### 20. State's Motion in Limine

 The State filed a motion *in limine* seeking to preclude the defendant's presentation of specific evidence during the habitual offender phase of the trial. The State maintained that the evidence was irrelevant to the issues. The trial court granted the State's motion over the defendant's objection. The defendant now contends that the trial court's ruling constituted reversible error. The State argues that the defendant waived the issue. The law is with the State. As this Court stated in *Webb v. State* (1983), Ind., 453 N.E.2d 180, 187, *cert. denied*, 465 U.S. 1081, 104 S.Ct. 1449, 79 L.Ed.2d 767 (1984):

> The granting of a motion *in limine* is not reviewable on appeal and a failure to offer the evidence involved during trial constitutes waiver of the issue. *Wilson v. State* (1982), Ind., 432 N.E.2d 30; *Smith v. State* (1981), Ind., 426 N.E.2d 364; *McCraney v. State* (1981), Ind., 425 N.E.2d 151.

The defendant made no attempt to introduce the evidence to allow the trial court to rule upon its admissibility in the context of the trial. The issue is waived.

### 21. Motion for Return of Money

 We include in this decision our resolution of the defendant's appeal in a related post-trial proceeding. Following the conclusion of the defendant's trial on charges of forgery and theft, he filed a "Petition For Court To Order Return of Property," alleging that on February 17, 1984, the sum of $1500.00 was seized as evidence in the case by the Martinsville Police Department,[2] and that the State is

254 Ind. 105, 258 N.E.2d 53; *Kindred v. State* (1970), 254 Ind. 73, 257 N.E.2d 667.

2. During the criminal trial which resulted in the defendant's convictions herein, the evidence indicated that as the defendant was driving approaching a visible police roadblock which was to result in his arrest, he gave his wife a "wad of

money" and told her to put it in her purse. She later found it to consist of 15 one hundred dollar bills that she subsequently handed to the defendant's employer, Joseph Barker, who relinquished the money to the Martinsville Police Department. Photocopies of the fifteen $100 bills were admitted in evidence at the trial as State's Exhibit 4.

"wrongfully depriving the defendant of his rightful possession of said property."

Following the filing of the petition, the trial court scheduled a hearing, notifying both the defendant and his stand-by counsel. The State appeared at the hearing by the Morgan County Prosecuting Attorney as did the defendant by his stand-by counsel. Upon learning that the trial court had not *sua sponte* ordered that the defendant be transported from the State Reformatory for the hearing, the defendant's stand-by counsel objected to the defendant's absence and informed the court that he, as stand-by counsel, was not prepared to call any witnesses or make any arguments in support of the petition. The defendant's counsel did not request a continuance. No evidence was presented, and the petition was overruled.

Upon the trial court's denial of the subsequent motion to correct errors, the defendant initiated an appeal to the Court of Appeals. Finding that the appeal raises a matter collateral to the principal appeal herein, we ordered the matter transferred and consolidated it with the present appeal.

The defendant claims error in two issues: (1) conducting a hearing in the defendant's absence, and (2) denial of petition for return of property.

Noting that the record contains no application from the defendant to personally attend the hearing, the state argues that there can be no abuse of discretion by the trial court in failing to order his transportation. We agree, particularly when considering the failure of defense counsel to seek a continuance so that evidence could be presented. Under the circumstances, we decline to find error in the denial of the defendant's petition for return of property.

*Conclusion*

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.